Emma Hornbeek, Plaintiff-Appellee, v. Russell Hornbeek, Defendant-Appellant.

Gen. No. 9,979.

Third District.
February 18, 1955.
Rehearing denied April 11, 1955.
Released for publication April 11, 1955.

Gilbert K. Hutchens, of Carrollton, Julian Hutchens, of White Hall, and Londrigan & Londrigan, of Springfield, for appellant.

Edward J. Flynn, and Harry G. Story, both of Jacksonville, and Brown, Hay & Stephens, of Springfield,

■■■■■■■■■

for appellee; Paul W. Gordon, of Springfield, of counsel.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

Luther Hornbeek, father of the defendant and husband of the plaintiff, died in 1938. By his will, the plaintiff became possessed of a life estate in 223 acres of land in Scott county, Illinois. Upon her death it was to be divided between the four children of Luther Hornbeek and Emma Hornbeek, namely Russell Hornbeek, the defendant, Burl Hornbeek, a son, Cecil Hornbeek Dencan, a daughter, and Mary Hornbeek Burbank, a daughter. The farm was being operated by the defendant, Russell Hornbeek, at the time of his father's death and had been so operated since 1932. He continued to farm the land after his father's death in 1938, until March 1, 1953, when by order of the Scott county circuit court, he was compelled to yield possession to the plaintiff. The original complaint was filed March 31, 1952 but it was amended July 30, 1952 and the cause was tried on the amended complaint. It consisted of two counts. Count I, alleged that the defendant, Russell Hornbeek, was unlawfully withholding possession of the farm and prayed for possession. Count II alleged that the defendant had failed and refused to account to the plaintiff for monies received from said farm as crops and otherwise and asked for an accounting. The defendant filed his answer in which he set up that he had delivered to the plaintiff her share of the crops raised on said farm, without objection, until the filing of the original complaint in the cause. The answer set up that the defendant was not obligated to pay anything for the use of the lands used for pasture. The answer admitted that the defendant had full control and direction of the crops planted on the farm during the years in question but

averred that his mother was fully familiar with the operations at all times. With the answer, the defendant filed his counterclaim praying for $4,229.77 for repairs and other expenses paid by him for the operation and maintenance of the farm, which he alleged were paid with the full knowledge and acquiescence of his mother. To the counterclaim, the plaintiff filed her answer which denied each and every allegation of the counterclaim.

The controversy was first referred to a special master in chancery for findings and conclusions as to Count I of the complaint. The special master found that the plaintiff was entitled to possession of the farm and this finding of the special master was approved by the court and by order filed February 19, 1953. Judgment was rendered in favor of the plaintiff that she have and recover from the defendant, Russell Hornbeek, the possession of the farm. On April 9, 1953, the circuit court by its order found that the plaintiff was entitled to an accounting for the rents and profits of the farm as claimed in the amended complaint and referred the matter to another special master in chancery to take an accounting of all the doings, dealings and acts of the defendant pertaining to the farm, the rents, issues and profits thereof, with orders to the special master to strike and determine a balance between the parties and to report such findings to the court. The special master held a very complete hearing and on December 11th, 1953, he filed his report in which he found that the total value of crops that were to be accounted for was $17,010.55; that the defendant should be allowed credits in the amount of $10,401.14, leaving a net balance due the plaintiff for her share of the crops, the sum of $6,609.41. To this amount the special master added the sum of $8,601 as pasture land rent due the plaintiff, or a total of $15,210.41 from all sources due from the defendant to the plaintiff. Both parties filed

objections to the report of the special master in chancery and on May 6, 1954, the circuit court entered a decree overruling the defendant's exceptions to the special master in chancery's report, but sustaining the exceptions of the plaintiff and finding that the special master in chancery had erroneously found that there was due $15,210.41 from the defendant to the plaintiff, and that after considering the testimony submitted by both parties, that it appeared that there was due from the defendant to the plaintiff, the sum of $59,698.22. Judgment on this finding of the court was entered in favor of the plaintiff and against the defendant in the amount of $59,698.22. From that judgment the defendant appeals to this court.

The plaintiff was a woman aged 88 years at the time of the hearing. It appears that sometime in 1947, the plaintiff deeded certain property to her son, Burl Hornbeek. The defendant felt that this was unfair and claimed that in a conversation with his mother, she told him to go ahead and take the crops as his share and that she would make it right with the girls; that he had paid the wheat rent until 1950 but that he had not paid any other crop rent to his mother or anyone since 1947; that this was in accordance with the agreement made with his mother after the deeding of property by her to Burl Hornbeek.

The evidence as to the crops, both on the part of the plaintiff and the defendant is very unsatisfactory. The plaintiff apparently kept no records, other than taxes paid, and the defendant kept very few, either as to expenses paid by him or crops raised and the amount received. The plaintiff relied mainly upon the testimony of F. Bryce Miller, an employee of the Doane Agricultural Service, a farm management company, who seems to have acted as her agent, and an Elmer Sauer, a project supervisor of researches for the soil

conservation service of the U. S. Department of Agriculture. Mr. Miller testified as to division of crops and Mr. Sauer as to what, according to tables used by the Department of Agriculture for the State of Illinois, the farm should have yielded in crops. The witness Sauer, admitted he knew nothing about the Hornbeek farm and that his records were those used in working out crop allotments.

The defendant raises three points in his appeal. 1. That the plaintiff had a complete remedy at law, and that Count II of the complaint should have been stricken. 2. That because the testimony was heard by the special master, the trial court had no better opportunity than this court to judge the credibility of the witnesses on review. 3. That where accounts are so intricate and complex as to justify an accounting in equity, they are not a proper subject for examination by the court and the court should not make the accounting.

The defendant raised the first point when he moved to strike Count II of the amended complaint on the grounds that it was a chancery count and should be stricken because the plaintiff had an adequate remedy at law. An examination of the amended complaint shows that it recites the following matters as grounds for an accounting in equity: (a) that the defendant had had full control of the farm for approximately 14 years; (b) that the defendant was farming other lands in addition to the farm in question, so that the identification of the crops raised on the farm would be difficult if not impossible, except from information to be obtained from the defendant; (c) that the yield per acre, the number of acres planted in given years, the sale price and other matters were all matters that were matters of information that only the defendant could produce, (d) and that the plaintiff was entitled to ex-

257

amine and evaluate the records and accounts of the defendant which would reflect the production and income from the farm.

The question raised before this court is whether or not these matters so recited in the complaint are sufficient to justify bringing a suit in chancery. The case of Allen v. Illinois Mineral Co., 299 Ill. App. 537, is in point. In that case the court said on pages 540–541: "The complaint must show that plaintiff has no adequate legal remedy and must allege some special and substantial ground of equity jurisdiction such as fraud, the need of a discovery, the mutuality or complexity of accounts, or the existence of a fiduciary relation . . . ." In this case there is no allegation of any fraud and there is no fiduciary relation. The complaint does set up that all records of the income and money made on the farm is within the knowledge and possession of the defendant, but there is no charge of complexity or multiplicity of matters to be adjudicated or heard. So a reading of the amended complaint would show that the only matter pleaded for grounds for equity jurisdiction is the charge that the defendant has had complete control of the farm for years, has all records and the plaintiff does not have any records. In the case of Allen v. Illinois Mineral Co., heretofore cited, the court in that case, referring to the case of County of Cook v. Davis, 143 Ill. 151, quoted as follows: "Where a court of law is competent to afford an adequate and ample remedy, courts of equity will remit the parties to the courts of law, where the right of trial by jury is secured to them. In such cases either party has a right to demand that the matter of the defendant's liability be submitted to a jury according to the course of the common law, and unless some special and substantial ground of equity jurisdiction be alleged, and, if necessary, proved, such as that a lien exists for the money demand which cannot be adequately enforced at law,

or that discovery is necessary for a recovery by complainant, or other like equitable considerations affecting the adequacy of the remedy at law, courts of equity will decline to interfere." And the court in the Allen case continuing, quotes further from the case of County of Cook v. Davis, where it said: "In actions cognizable at law, the mere fact that an accounting is necessary, even when there are cross accounts, is insufficient to give a court of equity jurisdiction (Hadley v. Morrison, 39 Ill. 392), the general rule being that a proper case is presented when the remedies at law are inadequate."

The case of Burr v. State Bank of St. Charles, 344 Ill. App. 332, presents somewhat analagous facts to this case. There, the prayer was for an accounting of all crops and produce taken from the property, and for the money or property into which crops were converted.

The court in commenting on this matter, said on page 338 of the opinion: "Appellant, in order to secure an accounting under Count I to establish his cause of action under Count II, must allege facts that will authorize the court to take jurisdiction in equity. An accounting for rents and profits by parties alleged to be in wrongful possession will not give equity jurisdiction where such accounting can be had in a proper action at law. The facts alleged in Count I do not show that the appellant is entitled to the accounting sought. He can get such discovery as he needs by motion under Section 58 of the Civil Practice Act."

In the case of Webster v. Hall, 388 Ill. 401 at page 406, the court there said: "It must be remembered that while Section 31 of the Civil Practice Act abolishes the distinction between actions at law and suits in equity, it has always provided, 'but this section shall not be deemed to affect in any way the substantial averments of fact necessary to state any cause of action either at law or in equity.' "

The fact that a number of items or payments by either party was considered in the cause, does not of itself make it so complicated and involved that it cannot be tried at law. As was said in the case of Calumet Nat. Bank v. Friendship Building & Loan Ass'n, 250 Ill. App. 322: "The fact that 211 checks are involved in the proceedings does not necessarily, of itself, constitute an action so complicated and involved that it cannot be tried at law." This view is repeated in Allen v. Illinois Mineral Co., 299 Ill. App. 537.

Considering all these factors, it is apparent that the only matter alleged upon which the plaintiff could have an accounting in equity is that discovery of the matters and things in the knowledge and possession of the defendant is necessary. There is no fraud alleged. There is no fiduciary relation involved. The mere fact that a large number of items are involved is not sufficient to require the aid of equity. So the right of the plaintiff to an accounting in equity must stand on the claim that only the defendant had the records and accounts and that the plaintiff did not have any records upon which to base an accounting. We do not think this justifies the trial court in overruling the motion of defendant to strike Count II of the complaint. Section 58 of the Civil Practice Act [Ill. Rev. Stats. 1953, ch. 110, § 182; Jones Ill. Stats. Ann. 104.058], gives the plaintiff full remedy and machinery to discover the matters and facts she needed for her suit. That section provides that wherever a bill of discovery would have been heretofore available, that the same discovery may be had by motion, to discover documents or other papers in the hands of the other party, admissions of fact may be had, and depositions of the other party may be taken. This would seem to afford a complete remedy for the plaintiff, at law, so that the resort to an accounting in equity is not necessary. It is the opinion of this court that Count II of the complaint should have been

stricken, since the plaintiff had an adequate remedy at law.

Since we hold that the remedy was at law and not in equity, the accounting made by the special master in chancery, his conclusions, the findings of the trial court, the decree and all matters connected with the accounting were in error. The cause is therefore reversed and remanded with instructions to proceed in accordance with the views expressed herein.

Reversed and remanded with instructions.