Joseph H. Nieberding, Plaintiff-Appellant, v. Phoenix Manufacturing Company, a Corporation, Defendant-Appellee.

Gen. No. 11,447.

Second District, First Division.

July 12, 1961.

Robert S. Foster, Stanley A. Durka, and Ward P. Fisher, all of Chicago, for appellant.

Baker & Hagstrom, James J. Costello, of Chicago and James V. Bartley, of Joliet, for appellee.

McNEAL, J.

The briefs disclose that this action was brought in equity for an accounting. The trial court referred the matter to a master in chancery to determine whether or not plaintiff was entitled to an accounting. After

hearing all of plaintiff's evidence, the master filed a report recommending that plaintiff's complaint be dismissed. The court confirmed the report and entered a decree dismissing the complaint. Plaintiff appealed.

Plaintiff Joseph H. Nieberding was employed as a sales manager in the "Moldit" or Rubber Division of the Phoenix Manufacturing Company under a written contract made on May 1, 1950. He continued under that contract through December, 1953. In January, 1954, 1955 and 1956, new contracts were executed. Each contract was terminable on 30 days' written notice, and each provided that plaintiff's full compensation for all services would consist of a specified salary and a certain percentage of the net profits of the Rubber Division. The percentage of net profits was to be paid as soon as possible after the books were closed for the calendar year. In case of termination by either party during the year, such profits were to be prorated. It was agreed that any and all complaints relative to compensation were to be stated and filed with Phoenix within 30 days of payment, and that failure to do so constituted a waiver of any further claim. The term "net profits" was defined as the amount of money determined in accordance with the accounting methods and systems or procedures or business policies of the Phoenix company, by its auditors after making allowances for all charges, all taxes, including corporate income taxes (other than taxes on capital gains), interest charges, etc. The 1956 contract specifically provided that a charge for corporate income taxes would be made against the Rubber Division as if it were operating as a separate company, whether or not the Phoenix corporation, as a whole, paid any income taxes.

During the course of his employment the records of the Rubber Division were available to plaintiff, and he was furnished a bonus statement in February or March following the end of each calendar year. Plain-

352

tiff was "harboring" complaints within the first ninety days of 1951 and had a number of conversations with company officers relative to the amount paid him for percentage of profits. He was referred to the company's independent certified public accountants who prepared the annual bonus statements. In the spring of 1951 they interpreted plaintiff's employment contract and explained their annual audits to him. No written complaint was filed with Phoenix until in March, 1955. This complaint was also referred to the company's independent accountants and a copy of their letter of explanation was furnished plaintiff in April, 1955. Although he could have resigned with 30 days' notice, plaintiff didn't feel that his complaints justified his resignation. On the contrary he renewed his contracts from time to time and continued his employment until March 23, 1956, and then resigned.

Plaintiff commenced this action in April, 1956, but his original and amended complaint were stricken. His second amended complaint was filed in February, 1957. Plaintiff's theory on appeal is that the decree was against the manifest weight of the evidence, and that he conclusively established his right to an accounting by proof of complexity of accounts, the need for discovery, the nature of the contract involved and the fiduciary relationship of the defendant in exercising control over the accounts. He also claims that the court and master incorrectly assumed that proof of fraud was essential to establish the right to an accounting, and that they erred in holding that he waived or was estopped from asserting claims because he continued his employment under the original contract and entered into further contracts, and also in approving deductions from profits for taxes which were not paid.

At the outset it should be noted that plaintiff's 18-page abstract of the record wholly fails to present

353

■■■■■■■■■■■

the issues before the trial court or that court's determinations on any of the matters complained of on appeal. Portions of the abstract are as follows:

"ABSTRACT OF RECORD

Page of
Record

| | |
|---|---|
| 53 | Complaint, Second Amended |
| 100 | Answer x x x |

-17-

| | |
|---|---|
| 1455 | Master's Report. |
| 1463 | Objections to Master's Report. x x x |

-18-

| | |
|---|---|
| 1615 | Decree of the Circuit Court of Will County. |
| 1620 | Notice of Appeal. |
| 1624 | Praecipe for Record. |
| | Certification of Record from J. Elmer Swansbro, Clerk of the Circuit Court of Will County." |

■■ ■■ Although his abstract and brief contains references to plaintiff's exhibit 45 and defendant's exhibit 124, the abstract discloses the content of none of these exhibits. It is not the province of this court to search the record, especially one containing over 1600 pages and over 150 exhibits, for the purpose of finding errors on which to predicate a reversal. An abstract must contain sufficient parts of the record to fully present every error relied on and the substance of the record should be so abstracted that it will not be necessary to resort to the record to determine the issues presented. Rubinstein v. Fred A. Coleman Co., 22 Ill App2d 116, 121, 159 NE2d 379; Goodman v. Motor Products Corp., 22 Ill App2d 378, 387, 161 NE2d 347; Campbell v. Fazio, 23 Ill App2d 106, 161 NE2d 579.

In Allen v. Illinois Mineral Co., 299 Ill App 537, 20 NE2d 898, 900, which was a suit in chancery for an accounting, the Court said: "The complaint must

show that plaintiff has no adequate legal remedy and must allege some special and substantial ground of equity jurisdiction such as fraud, the need of a discovery, the mutuality or complexity of accounts, or the existence of a fiduciary relation." Without resort to the record in the instant case, this court cannot determine whether or not plaintiff alleged any ground for an accounting in equity. So far as we are able to ascertain from the abstract, there was no proof of fraud or fiduciary relationship, and there was no showing of any complexity of accounts or any need of discovery.

The additional abstract filed by defendant shows that the trial court ordered Phoenix to produce its books and records, correspondence, memos, and other documents, income tax returns, invoices, receipts and all other memoranda relating to purchases and sales, bank statements and check book stubs, payroll date of employees and officers including bonus payments from May 8, 1950 to and including April 26, 1956. All of these items and more were equally available to plaintiff under the discovery provisions of the Civil Practice Act and Supreme Court Rules in an action at law. These provisions afforded plaintiff an adequate and complete remedy for discovery at law, and resort to an accounting in equity was not necessary. Hornbeek v. Hornbeek, 5 Ill App2d 253, 260, 125 NE2d 535.

■ Defendant's additional abstract shows that plaintiff's salary was $4,700 for 1950, $7,200 for the years 1951 through 1954, and $7,666.66 for 1955. His bonus payments for those six years amounted to $1,-301.36, $2,886.50, $8,179.44, $9,479.08, $4,861.00 and $16,608.42. For January, February and March, 1956, he was paid $2,499.99. His total compensation amounted to $86,982.45. The additional abstract also shows that in the spring of 1951 plaintiff was advised by defendant's independent accountants concerning Phoe-

355

nix' policy and practice of deducting corporate income taxes from net profits as if it were operating as a separate company. These deductions for 1954 and 1955 amounted to $41,074.40 and $145,267.76, although Phoenix paid neither amount to the Government for such taxes. Plaintiff did complain of this method of determining net profits, yet he filed no complaint with Phoenix within 30 days of bonus payments as required by his contract of employment. With full knowledge of this method of accounting plaintiff renewed the contracts, continued his employment, and finally in 1956 executed a contract spelling out this precise provision. All of these contracts provided that failure to file a complaint constituted a waiver of any further claim. Under these circumstances we are of the opinion that the trial court correctly concluded that plaintiff is in no position to complain that the accounting procedures followed or the charges made for income taxes in the bonus statements were improper.

The trial court properly referred this cause to its master to determine whether or not plaintiff was entitled to an accounting. The right to an accounting is not an absolute right, but one which should be accorded only on equitable principles. It will not be ordered if the circumstances are such as to make an accounting unnecessary or improper. Patterson v. The Northern Trust Co., 170 Ill App 501, 516. Plaintiff had the burden of proving by a preponderance of the evidence that he was entitled to an accounting and the chancellor's decision in deciding this question will not be disturbed unless against the manifest weight of the evidence. Hickey v. Hickey, 371 Ill 476, 481, 21 NE2d 579; Derkers v. Vaughn Co., 348 Ill App 407, 109 NE2d 262.

On the record presented by plaintiff's abstract we cannot say that the trial court's determination that plaintiff was not entitled to an accounting in

356

equity was against the manifest weight of the evidence, and therefore the decree of the Circuit Court of Will County is affirmed.

Affirmed.

SMITH, P. J. and DOVE, J., concur.