BUNG-ORN NETISINGHA *et al.*, Plaintiffs-Appellants, *v.* END OF THE LINE, INC., *et al.*, Defendants-Appellees.

First District (4th Division)    No. 80-3259

Opinion filed June 17, 1982.

Sodaro & Deboice, of Chicago, for appellants.

George C. Rantis, of Chicago, for appellee Mary Creamer.

Morris D. Witney, of Chicago, for appellee Prasit Netisingha.

JUSTICE JIGANTI delivered the opinion of the court:

This action was brought as a shareholder's derivative suit by the plaintiffs, Bung-Orn Netisingha and Uthan Netisingha against End of the Line, Inc., and its officers and directors, Mary G. Creamer, Terrence T. Creamer, Phontong Netisingha and Prasit Netisingha. The plaintiffs sought to impose a constructive trust upon certain real estate purchased by Mary Creamer while she was secretary of the corporation and to obtain an accounting of the funds received and expended by the corporation for the period from January 1, 1977, to the date the complaint was filed, November 21, 1979, and thereafter. The trial court denied both the constructive trust and the accounting. The plaintiffs do not appeal from the decision concerning the constructive trust. The sole issue before this court is whether the trial court erred in denying the plaintiffs' request for an accounting.

End of the Line is a fast-food restaurant owned and operated by the parties to this suit. The shares in the corporation are divided equally between plaintiffs Bung-Orn Netisingha and Uthan Netisingha, and defendants Mary Creamer and Phontong Netisingha. Bung-Orn Netisingha was elected a director and the treasurer of the corporation. Mary Creamer was elected a director and the secretary of the corporation. As such, Mary Creamer kept the books and financial records of the corporation. She made all of the bank deposits and wrote the corporate checks. The plaintiff Uthan Netisingha acted as night manager of the restaurant and the defendant Prasit Netisingha was the day manager.

It is essential to an understanding of this lawsuit to briefly outline the accounting procedures utilized at End of the Line. The restaurant is a 24-hour operation employing as many as 14 and as few as 7 workers. The bookkeeping and money handling procedures followed at End of the Line were initiated by Terrence Creamer, Mary Creamer's husband, and Waroon Netisingha, Bung-Orn Netisingha's husband. Each employee is

responsible for ringing up on the cash register sales made to his particular customer. At both the end of the day shift and the night shift the day or night manager would take the money out of the register, count it, and record the amount on a brown paper bag into which he would place the cash together with receipts for any bills paid from the register that day. He would read the cash register tape total and compare it with the actual count and write on the brown paper bag any difference between the two. The information recorded on the night-brown-bag would be copied onto the day-brown-bag and totaled. The night proceeds would be transferred into the day-brown-bag and those proceeds would be delivered to Mary Creamer each day. As the bookkeeper for End of the Line, Mary Creamer would get six day bags a week and record that information on ledgers as weekly totals rather than daily totals. The cash register tapes were not sent to the bookkeeper, and once the ledger entry was made the brown bags were destroyed.

In December 1978, Bung-Orn Netisingha asked Uthan Netisingha to procure the cash register tapes so she could determine the gross receipts of End of the Line. He did so during December 1978 and again during the first three months of 1979.

On November 13, 1979, Bung-Orn Netisingha served a written demand upon the officers and directors of End of the Line for a complete accounting and for the delivery of all corporate books and records. Mary Creamer responded to that request by delivering the corporate bank statements on November 21, 1979. The present suit was filed on that date. On March 10, 1980, the plaintiffs filed a petition for a court order to permit Bung-Orn Netisingha to have access to the place of business in order to observe the cash register and to obtain and verify the day and night tapes. That order was entered on March 12, 1980.

At trial, the plaintiffs attempted to show that substantial funds were missing from the gross receipts of the business. They introduced the corporate income tax returns from 1976, 1977, 1978 and 1979. These returns reflected the total sales and cost of goods for those years. The plaintiffs also introduced records of all of the deposits of receipts made by the corporation during all relevant times. A ratio of "sales" to "cost of goods sold" for End of the Line was determined by dividing End of the Line's total yearly sales (as obtained from its income tax returns for 1976 through 1979) by its total yearly "cost of goods sold" (figures taken from the same returns). This ratio demonstrated a percentage situation, and showed how much more, percentage-wise, the monies taken in were than the monies expended in costs. Using this ratio, the plaintiffs showed that in 1976, End of the Line took in $2.06 for each dollar spent to purchase goods. In the year 1977, End of the Line took in $1.98 for each dollar's worth of goods purchased. In the year 1978, the ratio dropped to $1.77 for

each dollar of goods purchased, and in 1979, it dropped even further to $1.65 per dollar's worth of goods purchased. The plaintiffs then demonstrated that for the period from December 1978 through March 1979 (the time during which Uthan Netisingha gave the register tapes to Bung-Orn Netisingha), the ratio of sales to cost of goods sold was $2.11. During the weeks when Bung-Orn Netisingha watched the cash register under court order the ratio was $2.00 received for every dollar spent. The defendants introduced the corporate records of sales made and costs expended for the period after Bung-Orn Netisingha began to sit in and watch the register and through August 30, 1980. The defendants' figures show that the ratio of sales to cost of goods sold for that period was $1.89 to $1.00. The plaintiffs claim that the rise in gross receipts after Bung-Orn Netisingha began her watch of the cash register indicates that some of the corporation's gross receipts had been disappearing before reaching the bank. Accordingly, the plaintiffs argue that the court erred in denying their request for an accounting.

■■ The plaintiff in a suit for an accounting has the burden of proving his right to the desired accounting. (*Derkers v. Vaughan, Co.* (1952), 348 Ill. App. 407, 109 N.E.2d 262; *Lager v. Rea* (1951), 344 Ill. App. 438, 101 N.E.2d 285; 1 Am. Jur. 2d *Accounts and Accounting* sec. 47 (1962); 1 C.J.S. *Accounting* sec. 39 (1936).) "The right to an accounting * * * is not an absolute right, but is one which should be accorded only on equitable principles. It will not be ordered if the circumstances are such as to make an accounting unnecessary or improper." (*Tankersley v. Albright* (7th Cir. 1975), 514 F.2d 956, 970 n.39.) The trial court has broad discretion in determining whether to order an accounting, and in making this determination it will consider the particular circumstances of each case. See *Nelson v. Darling Shop of Birmingham, Inc.* (1963), 275 Ala. 598, 157 So. 2d 23; *Dailey v. Sunset Hills Trust Estate* (1975), 30 Ill. App. 3d 121, 332 N.E.2d 158.

In the case at bar, the plaintiffs ask for an accounting based on evidence which they interpret as showing that substantial amounts of the gross receipts of the corporation were not deposited. Jerome Lipman, a certified public accountant called by the plaintiffs, analyzed the corporation's tax returns and the ratio of sales to cost of goods sold and concluded that money was missing. However, it appears that under the bookkeeping and accounting practices employed at End of the Line, an accurate accounting of all monies received and disbursed would be impracticable if not impossible. Under this system, which was set up by Waroon Netisingha, Bung-Orn's husband, and Terrence Creamer, Mary's husband, the cash register tapes and the brown paper bags with the daily totals on them were systematically destroyed. There is therefore no evidence that Mary Creamer did not accurately transpose the sale and expenditure data from

the brown paper bags to her accounting sheets or that she did not deposit all monies given to her in the bags.

■■ As previously stated, a court of equity has broad discretion in determining whether to order an accounting based upon the particular circumstances in each case. The plaintiffs here were not only familiar with the type of accounting practices utilized at End of the Line, they played an integral role in setting up a system which insured the destruction of all evidence which would accurately document the gross receipts of the business. We believe the trial court was acting within its discretion when it refused to hold the defendants liable to account under these circumstances.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON, P. J., and ROMITI, J., concur.