VIRGINIA M. FERRELL, as Adm'r of the Estate of Bert Ferrell, Deceased, Plaintiff-Appellant, v. PLASTI-DRUM CORPORATION, Defendant-Appellee.

First District (5th Division)   No. 84—1277

Opinion filed August 14, 1987.

PINCHAM, J., dissenting.

Terrance A. Hilliard, of Law Offices of Victor Cacciatore, of Chicago, for appellant.

Wayland B. Cedarquist and William M. McErlean, both of Chicago (Boodell, Sears, Giambalvo & Crowley, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

This is an appeal by plaintiff, as administrator, from a trial court's judgment in an accounting action involving the sale of her late husband's stock in defendant's, Plasti-Drum Corporation's, business. The facts are as follows:

Bert Ferrell and Walter Craig incorporated defendant Plasti-Drum Corporation in 1972. Each held 5,000 shares of common stock and both served as an officer and director.

In April 1975, Bert Ferrell suffered a ruptured appendix, after which his health declined. Bert Ferrell resigned as president of Plasti-Drum and Walter Craig assumed the position. From May to December 1975, Bert Ferrell and Walter Craig negotiated a buyout agreement of Bert Ferrell's ownership interest in Plasti-Drum. On January 19, 1976, Bert Ferrell and Walter Craig signed a memorandum of an agreement drafted by Wayne Johnson, an attorney for Plasti-Drum. The memorandum was incorporated into a formal buyout agreement which was signed by Ferrell and Craig on January 29, 1976. The agreement provided that for five years Plasti-Drum pay Bert Ferrell 10% of the corporation's net profits indicated on the corporate tax return.

Bert Ferrell died on February 26, 1976. His wife, Virginia Ferrell, was appointed administrator of his estate.

No payments were made by Plasti-Drum to Ferrell's estate pursuant to the buyout agreement for the fiscal years April 1975-76 and 1976-77 because, according to testimony, Plasti-Drum operated at a loss during those years. However, Plasti-Drum paid to the Ferrell estate 10% of the corporation's net profits indicated on taxable income line 30 of the corporate tax return for the fiscal years April 1977-78, April 1978-79 and April 1979-80.

Mrs. Ferrell cashed the payment checks for the fiscal years ending in April 1978 and 1979, but she did not cash the payment check for the fiscal year ending in April 1980. The April 1980 payment check from Plasti-Drum was accompanied by a letter dated January

12, 1981, from Walter Craig. The letter stated that under the buyout agreement between Craig and Ferrell, Plasti-Drum was to pay Bert Ferrell 10% of the corporate profits for five years and the 1980 check was the final payment due.

On July 14, 1980, Mrs. Ferrell filed this action seeking an accounting of Plasti-Drum profits, the bonuses paid its employees in the years 1977 through 1981, a determination as to the years payments under the agreement were to begin and end, and the method used to calculate the amount of profit due the decedent's estate under the contract.

The defendant answered asserting estoppel as an affirmative defense. Defendant charged that plaintiff was estopped from denying that the contract period commenced other than the year 1974-75. The basis of this claim was that plaintiff had made an allegation to that effect in prior litigation between the parties in Will County, Illinois. The Will County case had been appealed and no issue as to the contract term appears to have been settled in that appeal. *Plasti-Drum Corp. v. Ferrell* (1979), 70 Ill. App. 3d 441, 388 N.E.2d 438.

The contract provisions at issue in the case are as follows:

"Whereas Ferrell owns Five Thousand (5,000) shares of common stock of the corporation and desires to sell the same to the corporation and the corporation desires to purchase and redeem all of said shares of common stock upon the terms and conditions all as is hereinafter set forth and contained;

2. That the purchase price for the Five Thousand (5,000) shares of common stock of the corporation so purchased and redeemed by the corporation shall be paid in the following manner to wit:

A. *For the next five (5) successive fiscal years, commencing with the close of its current fiscal year, the corporation shall pay to Ferrell, within ten (10) days of the preparation of its annual federal income tax return, ten percent (10%) of its net profits; such net profits to be determined from the federal income tax return* prepared by a certified public accountant engaged by the corporation for that purpose. Such *net profit shall be determined after provision for payment of all corporate taxes, however any bonuses paid to officers or employees of the corporation shall be added to the net profit indicated on such federal income tax return.*" (Emphasis added.)

After a three-day trial, the trial court made an oral ruling in defendant's favor. On May 18, 1984, the court entered judgment. In its final judgment the court found (1) the issues in favor of defendant

and against plaintiff; (2) that plaintiff's proof did not establish by a preponderance of the evidence that she is entitled to receive anything more than she received and retained in the past; (3) that the term of the agreement is determined from the evidence to be the five fiscal years starting with fiscal year ending April 30, 1976, and concluding with fiscal year ending April 30, 1980; and (4) that said administrator takes nothing by her suit and that she go hence without delay.

The plaintiff appealed. On appeal she contends that the trial court erred in the following respects:

(1) that the trial court's conclusion as to the term (1975 to 1980) is contrary to the evidence;

(2) that the conclusion the Corporate Tax Return (Line 30) was the basis for calculating defendant's net profit is manifestly erroneous;

(3) that the trial court erred in holding Craig's salary increases and profit sharing benefits were not covered by the bonus add-back language of the net profits agreement; and

(4) the court erred in allowing evidence regarding working papers of a prior accountant, the same being hearsay.

We affirm the trial court for the following reasons.

■ ■ We initially point out that the burden of proof in an accounting action is on the party that seeks the remedy. He or she has the burden of proving by a preponderance of the evidence a right to the accounting. (*Nieberding v. Phoenix Manufacturing Co.* (1961), 31 Ill. App. 2d 350, 176 N.E.2d 385.) Whether a party has established a cause of action for an accounting is a question of fact for the court and the court's finding on that question will not be disturbed unless it is against the manifest weight of the evidence. (31 Ill. App. 2d 350, 356, 176 N.E.2d 385.) Finally on this point, a trial court has broad discretion in determining whether to order an accounting, and in making this determination, it will consider the particular circumstances of each case. *Netisingha v. End of the Line, Inc.* (1982), 107 Ill. App. 3d 275, 278, 437 N.E.2d 857.

Plaintiff first asserts that the phrase in the January 1976 agreement, '[f]or the next five-year successive years, commencing with the close of its current fiscal year, the corporation shall pay Ferrell,'' meant the years 1976 to 1981. The trial court found it meant 1975 to 1980.

The facts disclose that the plaintiff did not know of the agreement until after her husband's death. She was appointed administrator of her husband's estate in April of 1976. She filed suit against defendant in May 1976. She sought an eviction for nonpayment of rent. Plasti-

Drum filed a suit for an injunction to stop the plaintiff from going into the plant, for a declaratory judgment and other relief. Plaintiff filed a counterclaim in this action for a money judgment for amounts owed the decedent during his lifetime; for money due on notes "10% of net profits for Plasti-Drum's fiscal year ended April 30, 1976"; possession of the plant; and $3,000 for February 1976, per a lifetime agreement.

■ The cases were consolidated and on September 14, 1977, the Will County trial judge entered a judgment order. Plaintiff appealed. The appellate court in the Third District affirmed the trial court in part and reversed in part. The principal point of reversal was that a note of $153,802.14 had been accelerated by plaintiff, contrary to the trial court's conclusion. A judgment for that amount was ordered, plus interest, if any. (*Plasti-Drum Corp. v. Ferrell* (1979), 70 Ill. App. 3d 441, 388 N.E.2d 438.) The appellate court did not decide the agreement term in that case but did indicate the claim of plaintiff for "payment to defendant of 10% of plaintiff's profits for fiscal year ending April 30, 1976." *Plasti-Drum Corp. v. Ferrell* (1979), 70 Ill. App. 3d 441, 443, 388 N.E.2d 438.

In her sworn pleading in that suit, plaintiff stated:

"That by virtue of the agreement aforesaid, counterclaimant's intestate was entitled to ten (10%) per cent of the net profits of the counterdefendants within ten (10) days of the preparation of its annual Federal Income Tax Return at the conclusion of the fiscal year on April 30, 1976."

The original trial judge noted "the proofs show that there were no net profits and this claim has been abandoned by her."

Plaintiff began the present litigation in Chicago in December of 1980. The trial consisted of 10 witnesses and 33 exhibits.

The trial court did not believe the testimony of plaintiff and Walter Lewis as to the term and the charge that the contract term as to the payment of the 10% began with the fiscal year 1975 rather than 1976.

He expressed his disbelief in the oral opinion based on the sworn statement in the 1976 litigation in Will County. He also referred to the fact that plaintiff acknowledged payment under the January 19 agreement of $153,000, plus $15,000, plus $2,000. In addition, he referred to the fact that plaintiff cashed two of the three 10% of profit payments made to her. In the first two years, 1975-76, defendant made no profit.

With respect to Lewis' statements, the trial judge indicated the statements he made as to the intent of the deceased were made to

fortify plaintiff's assertion that she did not know of the intent of the agreement when she filed pleadings in the prior litigation, contrary to the pleading in this case.

The trial judge stated in his oral opinion that "that statement by Lewis is incredible and not worthy of belief, given the fact that Lewis was close enough to Ferrell to have been given a power of attorney by the estate to collect rents for the estate." The trial court properly considered the prior statement made by plaintiff of the date payment was to begin as an evidentiary or judicial admission. *Murphy v. Rochford* (1977), 55 Ill. App. 3d 695, 371 N.E.2d 260.

■ The fact that the trial judge did not believe plaintiff's belated claims of mistake after a number of years of receiving payment is no reason for an appellate court to overturn this conclusion. In a bench trial, the trial court sits as the jury and weighs evidence and determines credibility and its findings are entitled to great weight on appeal and should not be set aside unless clearly against the manifest weight of evidence. *Ross v. Thomas* (1977), 45 Ill. App. 3d 705, 360 N.E.2d 126.

■ The trial court's determination that plaintiff's evidence did not overcome her sworn allegation in the Will County suit that the start of the term of payments under the agreement was the fiscal year ending April 30, 1976, is not against the manifest weight of the evidence and must be affirmed.

■ The trial court concluded that plaintiff had not proven that taxable income line 30 on the Federal tax return was not to be used as the basis for calculating monies owed to Bert Ferrell pursuant to the agreement provision that Plasti-Drum pay 10% of its net profits for the next five successive fiscal years. Plaintiff contends on appeal that this finding was against the manifest weight of the evidence. We disagree.

Although paragraph 2(A) of the agreement may be considered ambiguous as to the question of what line on the Federal tax return is to be used in determining the net profit figure, it is clear that the Federal income tax return was the controlling reference. The issue was not how best to calculate Plasti-Drum's profit, but what line entry on the tax return was intended to most accurately reflect the profits as viewed by the signators to the agreement. Taxable income is an objective standard upon which to determine net profits because it reflects the reality of management decisions as to how best to report the financial status of the corporation.

"The court will not resort to rules of construction where an agreement itself is clear ***. However, where the terms of the agree-

ment itself are not clear, or are ambiguous, the court will construe the contract to give effect to the intention of the parties." (*Ricke v. Ricke* (1980), 83 Ill. App. 3d 1115, 1118, 405 N.E.2d 351.) Attorney Johnson, who drafted the agreement, testified that the net profit figure was to be ascertained from the taxable income line 30 on the Federal income tax return. The two accounting firms which implemented the terms of paragraph 2A each used the taxable income figure in calculating the 10% of net profits due to Bert Ferrell under the agreement. Mr. Ferrell signed the agreement with no indication that such was not his intent. Mrs. Ferrell accepted and cashed two checks from Plasti-Drum based upon the taxable income figure entered on line 30 of the income tax return.

The words in paragraph 2(A), "determined from the federal income tax return," support the conclusion that the tax return was to provide the specific net profit entry to be relied upon in calculating the 10%, rather than Mrs. Ferrell's assertion that the income tax return served as a source of multiple entries from which one should be required to make a net profit calculation. The former interpretation infuses certainty into the 10% calculation, while the latter would generate uncertainty and endless dispute. We affirm the trial court's finding that the net profit figure was to be determined by using the taxable income entry on line 30 of the Federal tax return.

■■ In her third point, plaintiff argues that the trial court erred in holding that Craig's salary increase and profit sharing benefits were not covered by the agreement. The agreement qualified the 10% of net profit figure as follows:

"[H]owever, any bonuses paid to officers or employees *** shall be added to the net profit."

Plaintiff, in her contention on this point, claims that compensation in excess of Craig's 1976 salary ($26,000) should be construed as bonuses paid to Craig. The trial court concluded on this point that plaintiff failed to sustain her burden of proof as to the term "bonus" in the agreement. In support of this conclusion, the trial court directed its attention to a finding of the Will County court that "neither Walter Craig nor Bert Ferrell (deceased) were interested in the subject matter of expense accounts or salaries."

The only evidence suggested by plaintiff as to the meaning of the term "bonus" came from Mr. Doherty, an accounting expert. Doherty testified on cross-examination that his conclusions on bonuses was based on his interpretation of the agreement. However, Plasti-Drum had an ordinary bonus program as authorized by its board's action of July 8, 1974. This was prior to the written agreement that used the

term "bonuses paid to officers or employees in amounts to be added to net profit rather than salary increases or other types of income." In light of the existence of a bonus program, the trial court correctly concluded that "Mr. Doherty's conclusions seem to spring from thin air, with nothing referenced from his field of expertise to support them."

Wayne Johnson, the attorney who drafted the agreement, testified that his firm was selected by Ferrell. As the trial court stated, "He testified that bonus was understood and intended to cover payment of money to officers and employees over and above annual salary." In light of these facts, this court cannot conclude that the trial court's determination that plaintiff failed to meet her burden as to the meaning of the term "bonus" was in error or unsupported by evidence.

■■ In her final argument, plaintiff contends that permitting the accountant, James O'Connell, to testify that original accountants had used line 30 of the corporate tax return as the basis of calculating the amounts due the Ferrell estate under the net profits clause was impermissible hearsay. She also contends that the accountant's testimony relating to April 30, 1976, as the effective date of the net profits clause was impermissible hearsay. She bases this contention on the fact that O'Connell's conclusions were based on the unproduced working papers of the prior accountants who did not testify.

Although the testimony may be hearsay, the court in *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, created an additional exception to the all too many exceptions to the hearsay rule. Under the present rule, an expert may base his opinions on facts or data of a type reasonably relied on by experts in the particular field in forming opinions or inferences on the subject. The facts and data themselves need not necessarily be admissable in evidence. (84 Ill. 2d 186, 417 N.E.2d 1322.) Absent some indication in the record that the working papers of the prior accountants were data or facts not relied on by experts in expressing opinion, we cannot conclude that the trial court committed reversible error in allowing the testimony.

■■ After his comment on the evidence, the trial court concluded "the action here is not for rescission of the agreement based on fraud, misrepresentation or mistake of fact; plaintiff's testimony in evidence hints at a no-meeting-of-the-minds theory. However, the action is as selective of terms deemed through hindsight to be unfavorable while retaining the advantage gnawed through companion terms. No theory of equity permits such result. Plaintiff's action is for accounting and the plaintiff's proofs do not establish by a preponderance of the evidence that she is entitled to anything more than she

has received and retained in the past."

Our examination of the record discloses that the trial judge was correct, basing his conclusion not on concepts of estoppel or *res judicata*, but on well-established equitable principles and rules of evidence. Accordingly, we affirm the judgment of the trial court.

Affirmed.

LORENZ, J., concurs.

JUSTICE PINCHAM, dissenting:

I dissent. I do not agree with the majority's conclusion that the language of the buyout agreement provides that the five-year successive payments to Bert Ferrell by Plasti-Drum Corporation were to begin with the corporation's May 1, 1975, to April 30, 1976, fiscal year. Nor do I agree with the majority's conclusion that the trial court did not estop plaintiff, Bert Ferrell's widow, from asserting that the first payment was to begin with the corporation's May 1, 1976, to April 30, 1977, fiscal year.

On January 19, 1976, Bert Ferrell and Walter Craig signed a memorandum of the buyout agreement and on January 29, 1976, the memorandum was incorporated into the formal buyout agreement signed by Ferrell and Craig. The January 29, 1976, buyout agreement provided in pertinent part as follows:

> "A. *For the next five (5) successive fiscal years, commencing with the close of its current fiscal year, the corporation shall pay to Ferrell,* within ten (10) days of the preparation of its annual federal income tax return, ten percent (10%) of its net profits; such net profits to be determined from the federal income tax return prepared by a certified public accountant engaged by the corporation for that purpose." (Emphasis added.)

On this appeal plaintiff contends that the trial court erred in ruling that the first payment under the buyout agreement was for the corporation's fiscal year May 1, 1975, to April 30, 1976, and in ruling that the five payments under the buyout agreement were for the five fiscal years from May 1, 1975, to April 30, 1980, and not from May 1, 1976, to April 30, 1981. The gravamen of the conflict arises out of the fact that under the terms of the buyout agreement the corporation was to pay Bert Ferrell 10% of the corporation's net profit "for the next five (5) successive fiscal years, commencing with the close of its current fiscal year" and there were no corporate profits for its fiscal years May 1, 1975, to April 30, 1976, and May 1, 1976, to April 30,

1977, whereas there were corporate profits for each fiscal year thereafter, particularly May 1, 1980, to April 30, 1981.

This court stated in *Illinois Valley Asphalt, Inc. v. La Salle National Bank* (1977), 54 Ill. App. 3d 317, 319-20, 369 N.E.2d 525, "[i]t is well settled in Illinois that the construction, interpretation or legal effect of a contract are issues to be resolved by the court as questions of law. [Citations.] The principal issue in this case involves the construction and legal effect of the [contract] terms ***." Since defendant's appeal raises a question of law, the rule that a reviewing court may not set aside findings of a trial court unless contrary to the manifest weight of the evidence does not apply. "The construction and legal effect of the relevant terms of the [contract] are to be determined by this court as any question of law, independent of the trial court's judgment." 54 Ill. App. 3d 317, 320, 369 N.E.2d 525.

The court further stated in *Illinois Valley Asphalt* that the principal objective in construing an agreement is to give effect to the intentions of the parties and that the intentions of the parties are to be derived from the language of the agreement. If the terms of a written agreement are certain and unambiguous the sole determinant of the parties' intentions is the instrument itself. This court stated in *Joseph v. Lake Michigan Mortgage Co.* (1982), 106 Ill. App. 3d 988, 991, 436 N.E.2d 663, that "[i]t is well established that the primary objective in construing a contract is to give effect to the intention of the parties involved. [Citations.] The intention of the parties must be ascertained from the language employed in the instrument itself and *where there is no ambiguity, from such language alone.*" (Emphasis added.) In *Vigilante v. National Bank* (1982), 106 Ill. App. 3d 820, 823, 436 N.E.2d 652, the court stated, "[t]he law is clear that parties are bound by the language which they use regardless of their intent. *** Construction is a pure question of law, and the court must determine this from the documents' clear language." These legal principles are also expressed in *Benn & Associates, Ltd. v. Nelsen Steel & Wire, Inc.* (1982), 107 Ill. App. 3d 442, 446, 437 N.E.2d 900.

Application of these principles to the agreement in the case at bar compels the conclusion that the language of the buyout agreement provides that the first payment to Mrs. Ferrell by the corporation was to be for the corporation's fiscal year May 1, 1976, to April 30, 1977, as Mrs. Ferrell asserts.

A mere cursory reading of the agreement, when the words therein are given their plain, ordinary, customary and simple meaning and usage, leads to no other reasonable conclusion than that the parties intended that the first payment, "for the next five (5) successive

fiscal years, commencing with the close of its current fiscal year," was to be for the corporation's fiscal year May 1, 1976, to April 30, 1977.

On January 29, 1976, when the buyout agreement was signed, "the close of [the corporation's] current fiscal year" was April 30, 1976. On January 29, 1976, when the buyout agreement was signed, the corporation's "next five (5) successive fiscal years" were:

    (1) 1st year—May 1, 1976, to April 30, 1977.
    (2) 2nd year—May 1, 1977, to April 30, 1978.
    (3) 3rd year—May 1, 1978, to April 30, 1979.
    (4) 4th year—May 1, 1979, to April 30, 1980.
    (5) 5th year—May 1, 1980, to April 30, 1981.

The first annual payment, "for the next five (5) successive fiscal years, commencing with the close of its current fiscal year, [April 30, 1976,]" under any rational reading of the language of the agreement was for the corporation's May 1, 1976, to April 30, 1977, fiscal year.

From the plain language of the agreement, the first payment certainly could not have been for the corporation's fiscal year May 1, 1975, to April 30, 1976, as the trial court and the majority hold, for such a payment could not be a payment "for the next five (5) successive fiscal years, commencing with the close [April 30, 1976] of [the corporation's] current fiscal year."

The simple language of the buyout agreement clearly designated the number of payments, when and for what periods the payments were to be made. The language is unambiguous and it governs the intent of the parties.

The trial court's and the majority's interpretations of the language of the agreement are repugnant to the agreement's expressed terms, are based upon contrary extrinsic evidence, and are inappropriate and unacceptable. Such interpretation violates the clear intent of the parties as expressed in the agreement.

Contrary to the majority's contention, the trial court ruled, *inter alia*, that plaintiff, Mrs. Ferrell, was estopped from asserting that the first payment under the buyout agreement was for the fiscal year May 1, 1976, to April 30, 1977, because of pleadings she filed in previous litigation in Will County in the case *Plasti-Drum Corp. v. Ferrell* (1979), 70 Ill. App. 3d 441, 388 N.E.2d 438.

This previous Plasti-Drum suit was instituted by Plasti-Drum in Will County, Illinois, to enjoin Mrs. Ferrell from entering Plasti-Drum, from disposing of any of the collateral notes made by Plasti-Drum and held by the estate of Bert Ferrell, and from making any representation of Plasti-Drum's financial condition or communication

with any of Plasti-Drum's suppliers. Plasti-Drum further sought from the court a declaration that the notes made by Plasti-Drum and held by the Ferrell estate were not in default. Mrs. Ferrell filed a counterclaim in the Will County case and asked for an accounting of interest, salary and expense reimbursement due the estate, judgment against Plasti-Drum in the amount of $168,802 plus interest and attorney fees, or, in the alternative, delivery of the collateral which secured the notes, payment to her of 10% of Plasti-Drum's profits for the fiscal year ending April 30, 1976, payment of certain water charges, and possession of the premises occupied by Plasti-Drum under a lease from Bert Ferrell, plus judgment for accrued rent and attorney fees. The trial court ordered that $17,547.42 on deposit with the court could be withdrawn by Mrs. Ferrell, conditioned upon her acceptance of it as satisfaction for the back rent and the February salary payment, and the trial court granted her judgment on the water charges. The trial court also found that she was not entitled to possession of the premises; that she was not entitled to interest accrued on the April 1975 $153,802.14 note prior to its cancellation; that she had improperly accelerated the $153,802.14 note and was not entitled to judgment thereon; and that an injunction would issue preventing her from entering the leased premises without further authorization from Plasti-Drum or the court.

The question of which fiscal year the first payment was due under the buyout agreement was not pursued by Plasti-Drum or Mrs. Ferrell in this previous Will County Plasti-Drum case.

Defendant, Plasti-Drum, urged in written pleadings filed in the trial court in the case at bar that "plaintiff in 1976 sued for 10% of Plasti-Drum's net profits as determined by the federal income tax return for the fiscal year ending April 30, 1976" and that "plaintiff [Mrs. Virginia Ferrell] is collaterally estopped from relitigating the issue of the terms of the contract."

Mrs. Virginia Ferrell, plaintiff in the case at bar, was the defendant and counterplaintiff in the previous Plasti-Drum Will County suit. Regarding the Will County case, Mrs. Ferrell asserted in her pleadings in the trial court in the case at bar:

"In 1976, some months after Mr. Ferrell's death, the administratrix of his estate *** [sought] to collect certain obligations due the estate which were then in default. At the time, the plaintiff believed that the corporation was insolvent, but despite repeated demands, she was unable to secure audited financial statements for the corporation's recently completed fiscal year.

On the advice of local counsel, plaintiff included among her

claims an allegation that the estate was due a percentage of the profits of the corporation for the year ending April 30, 1976. Plaintiff, who was not a party to the contract, took this action because she believed on the advice of counsel that this allegation would enable her to obtain this financial information even though she was aware that the corporation had no profits through April 1976, and even though plaintiff believed that the intent of the parties to the contract was for profits for the five year period beginning May 1, 1977. At the time that this suit was brought, the defendant was in default on three obligations owed the estate totalling almost $200,000.00, not counting delinquent back rent. Because these obligations were of greater immediate concern to the estate than what at that time seemed to be illusory future profits, plaintiff made a claim for non-existent profits to obtain what she believed to be pertinent financial information about the company. In retrospect, this financial statement could probably have been requested in discovery without making these allegations in the context of her other claims, but that was not her belief at the time.

In the final analysis, this claim was abandoned and the statements in the pleadings claiming profits for 1976 did not advantage the plaintiff in any material way."

Mrs. Ferrell pointed out in her pleadings in the case at bar that in the previous Will County Plasti-Drum case "the court made no finding regarding the commencement of the contract period." Thus, opposed to Plasti-Drum's contention, Mrs. Ferrell further asserted in her written pleadings filed in the case at bar, "contrary to defendant's assertions, the plaintiff [Mrs. Ferrell] is not collaterally estopped from relitigating a claim where the issue was not before the court for final determination." Plasti-Drum expressly admitted in the case at bar that "the trial court in [the previous Will County] case specifically found in its final judgment order dated September 14, 1977 that plaintiff [Mrs. Ferrell] had abandoned that claim." The question of whether Plasti-Drum's fiscal year May 1, 1975, to April 30, 1976, or May 1, 1976, to April 30, 1977, was the first year for payment to Ferrell under the terms of the buyout agreement was not decided, discussed or raised on appeal in the previous Will County Plasti-Drum case.

In spite of the foregoing, in its findings on April 27, 1984, the trial judge in the case at bar stated:

"The following comments represent my findings of fact and conclusion of law. The court reporter's transcription of these

findings and conclusion is to be attached to and made a part of any order hereafter presented. The findings and conclusion are to be referred to and explicitly incorporated in the final order.

\* \* \*

For the purposes of this suit, she [Mrs. Ferrell] believes the contract period for the percent of profits is May '77 to May '81 and not May '76 to May '80.

\* \* \*

\*\*\* [P]laintiff in a prior case took the affirmative position that the terms of the agreement set by paragraph 2(a) was five years commencing May of 1976. \*\*\*

*She has not satisfactorily explained why that judicial posture, once aggressively asserted, should not estop her from seeking a contractual term commencing with 1977.* \*\*\*

\* \* \*

\*\*\* [S]he affirmatively asserted in her counterclaim [in her previous suit against Plasti-Drum] that the agreement provision for 10 percent was to commence in 1976, exactly as the terms of the agreement state.

Contrary to that prior litigation posture, she now asserts that the agreement provision for 10 percent was not to begin until the fiscal year ending April 30, 1977.

\* \* \*

\*\*\* *[N]o reason has been offered why estoppel should not bar her claim in this regard.*" (Emphasis added.)

From the foregoing, it is clear that the trial judge took the position that Mrs. Ferrell was estopped from asserting in the case at bar that Plasti-Drum's fiscal year May 1, 1976, to April 30, 1977, was the first year for which payment was due from the corporation under the terms of the buyout agreement. The majority's opposite assertions are contrary to the record and without merit. In my opinion estoppel was inapplicable to Mrs. Ferrell.

Estoppel may apply when a party has had his day in court and an opportunity to establish a claim. (*Haizen v. Yellow Cab Co.* (1963), 41 Ill. App. 2d 330, 336-37, 190 N.E.2d 514.) Estoppel precludes a litigant from denying a prior assertion where it would be unjust to permit the litigant to disavow such assertions upon which another party has relied to his detriment. (*Real v. Kim* (1983), 112 Ill. App. 3d 427, 434, 445 N.E.2d 783.) Estoppel is inapplicable where a representation of a party sought to be estopped is due to ignorance founded upon an innocent mistake or where there has been no detrimental reliance on the representation. (*Carey v. City of Rockford* (1985), 134 Ill. App. 3d

217, 220, 480 N.E.2d 164.) Estoppel must be proven by clear and unequivocal evidence. 134 Ill. App. 3d 217, 219, 480 N.E.2d 164.

Mrs. Ferrell correctly contends that the question of which was the first year for payment under the terms of the agreement was not resolved by the trial or appellate courts in the previous Will County *Plasti-Drum* case and that Plasti-Drum did not rely on such representations to its detriment. Mrs. Ferrell contends therefore that she could not be validly estopped from asserting in the case at bar that the first payment under the terms of the agreement was for the fiscal year May 1, 1976, to April 30, 1977. I agree.

In the previous Will County *Plasti-Drum* case, not only were Mrs. Ferrell's attorney, the trial court and the appellate court not called upon to interpret the plain language of the agreement for which fiscal year the first payment was to be made, her lawyer's interpretation or her own previous erroneous interpretation contrary to the plain words of the agreement would not be binding upon this court. Nor should they be. Nor do their previous erroneous interpretations justify the trial court or this court affixing an interpretation to the agreement which is contrary to the agreement's clear, unequivocal, unambiguous and plain language. Mrs. Ferrell was not a party to the agreement. She is the administrator of the estate of her late husband, who was a party to the agreement. It is the intent of the parties to the agreement, determined from the plain and clear language, which should control the interpretation of the agreement and not the statements of nonparties to the agreement filed in a lawsuit in which collateral issues were presented.

In *Chambers v. Appel* (1945), 392 Ill. 294, 64 N.E.2d 511, the supreme court held that the inconsistent allegations of heirs in a probate proceeding were not binding on those heirs in another proceeding because at the time the heirs filed the original inconsistent allegations, on advice of counsel, they did not have complete knowledge of the facts.

The supreme court held in *Lenzi v. Morkin* (1984), 103 Ill. 2d 290, 293, 469 N.E.2d 178, that "the intention of the parties at the time the contract was entered into must be ascertained by the language utilized in the contract itself, *not by the construction placed upon it by the parties.*" (Emphasis added.)

The majority concludes that "[t]he trial court properly considered the prior statement made by plaintiff of the date payment was to begin as an evidentiary or judicial admission." (159 Ill. App. 3d at 942.) This conclusion is ill-founded. Plaintiff's previous interpretation of the terms of the agreement entered into by her late husband was no more

than what plaintiff said it was—a mistaken interpretation, at a time and in a lawsuit in which the first year for the payment under the agreement was not an issue. Plaintiff's previous erroneous interpretation is contrary to the clear language of the agreement and should therefore be rejected. *Murphy v. Rochford* (1977), 55 Ill. App. 3d 695, 371 N.E.2d 260, on which the majority relies as authority for its conclusion that plaintiff's previous pleadings in the Will County case was an evidentiary or judicial admission, is not on point or analogous to the case at bar.

In *Murphy*, plaintiff, a Chicago police officer, asserted his fifth amendment privilege against self-incrimination and refused to testify before a Federal grand jury, for which he was suspended from the police department. Six months later plaintiff resigned from the police department after signing a release in which he waived his salary during the six-month suspension period. Subsequently, in another case the United States Court of Appeals affirmed a judgment which enjoined the superintendent of the Chicago police department from suspending or firing other Chicago police officers because they asserted their fifth amendment privilege against self-incrimination and refused to testify before a Federal grand jury. The judgment affirmed by the court of appeals also ordered that the officers be reinstated with back pay for their suspension or discharge periods. Murphy thereafter filed an action for his back pay, based upon the court of appeal's decision. On the hearing of the defendant's motion for summary judgment, regarding the validity of the release signed by Murphy, the police department's attorney stated, "[t]he court understands valuable consideration. In other words, not proceeding to go to trial and let [*sic*] him resign and he [*sic*] would withdraw all of the charges before him—before the Board. That is the consideration he was seeking, because even if he resigned, he could have been charged, tried, and convicted ***.'" (55 Ill. App. 3d 695, 700, 371 N.E.2d 260.) The trial judge granted the police department's motion for summary judgment and Murphy appealed. The appellate court vacated the summary judgment, remanded the cause for trial and stated:

"These representations of fact by defendants' attorney strongly suggest that part of the consideration for the release signed by plaintiff was an agreement not to prosecute him. An agreement not to prosecute is void because it is against public policy, as well as possibly constituting a criminal offense. [Citations.] Clearly, such an agreement could not constitute valid consideration for the release. Nor could the recited consideration of one dollar suffice, for it is not logically separable from

the rest of the agreement. In such a case illegality of part of the consideration renders the entire agreement unenforceable. [Citation.]

It is clear under Illinois law that this statement of fact by defendants' attorney, made in his capacity as their attorney at a judicial hearing, may be used as an admission of fact by them." 55 Ill. App. 3d 695, 700, 371 N.E.2d 260.

*Murphy* is therefore not analogous to or authority in the case at bar for the proposition that Mrs. Ferrell's unresolved pleadings in a previous lawsuit were properly considered by the trial court as an evidentiary or judicial admission. Significantly, however, the court in *Murphy* clearly spelled out the requisite ingredients for collateral estoppel, which ingredients are conspicuously absent in the case at bar. The court stated in *Murphy*:

"Our supreme court has provided a succinct statement of the [collateral estoppel] doctrine: 'Where some controlling fact or question material to the determination of both causes has been adjudicated in the former suit by court of competent jurisdiction and the same fact or question is again at issue between the same parties, its adjudication in the first cause will, if properly presented, be conclusive of the same question in the later suit, irrespective of the question whether the cause of action is the same in both suits or not.'" (55 Ill. App. 3d 695, 703, 371 N.E.2d 260.)

Thus, it was improper for the trial court to have applied collateral estoppel to Mrs. Ferrell's contention in the case at bar based upon her pleadings in the Will County case.

The majority further concludes that "[t]he fact that the trial judge did not believe plaintiff's belated claims of mistake after a number of years of receiving payment is no reason for an appellate court to overturn this conclusion [that the first payment under the agreement was for the fiscal year May 1, 1975, to April 30, 1976]." (159 Ill. App. at 942.) This conclusion is bootstrapping from facts which are given an erroneous construction. Plaintiff received payments from Plasti-Drum pursuant to the terms of the agreement for a number of years, namely fiscal years:

(1) May 1, 1977, to April 30, 1978,
(2) May 1, 1978, to April 30, 1979,
(3) May 1, 1979, to April 30, 1980.

Plaintiff did not receive payment for the fiscal year May 1, 1976, to April 30, 1977, because Plasti-Drum operated at a loss during that year. Under the terms of the agreement, plaintiff did not expect pay-

ment for that year. Moreover, plaintiff has not urged the ludicrous contention before this court, as the majority suggests, that "[t]he fact that the trial judge did not believe plaintiff's belated claim of mistake after a number of years of receiving payment [was a] reason for the appellate court to overturn [the] conclusion [that the first year for payment under the agreement was May 1, 1975, to April 30, 1976]." 159 Ill. App. 3d at 942.

Because the agreement was clear and unambiguous it was improper for the trial court to resort to extrinsic evidence to interpret the agreement or to determine the intention of the parties. The court stated in *Wilson v. La Salle Manufacturing & Machine Co.* (1978), 58 Ill. App. 3d 219, 221, 374 N.E.2d 30, "[w]hen language of the agreement is unambiguous and clear, there is no need to look beyond the instrument to determine the intention of the parties." Nevertheless, the trial court heard testimony from Walter Lewis that Mr. Ferrell intended to receive 10% of Plasti-Drum's net profits for the upcoming five years, beginning with May 1, 1976. The memorandum between the parties stated that Bert Ferrell was to receive 10% of the net profits of Plasti-Drum for the next five years after May 1, 1976. Wayne Johnson, who was the attorney for Plasti-Drum and was the drafter of the buyout agreement between the parties, admitted that the agreement called for payment of 10% of Plasti-Drum's net profits for the next five years, not 10% for the current fiscal year and the next following four years. Even though the trial judge had before it this extrinsic evidence, which was supportive of, compatible to and in accord with the language of the agreement, nevertheless, the trial judge in his interpretation of the agreement instead relied on other extrinsic evidence which was contrary to the plain language of the agreement. The trial judge's interpretation of the agreement was likewise contrary to the plain language of the agreement.

The language of the agreement in the case at bar is clear. The language of the agreement, "[f]or the next five (5) successive fiscal years, commencing with the close of its current fiscal year," precludes the inclusion of the then current fiscal year, May 1, 1975, to April 30, 1976, as the first year of the five years for which payments were to be made.

The court will not resort to rules of construction where an agreement itself is clear and unambiguous. (*Ricke v. Ricke* (1980), 83 Ill. App. 3d 1115, 1118, 405 N.E.2d 351.) The agreement was entered into on January 29, 1976. To reach the conclusion that the first year for payment under the agreement was May 1, 1975, to April 30, 1976, compels a disregard for the agreement's language "[f]or the next five

(5) successive fiscal years, commencing with the close of its current fiscal year, the corporation shall pay to Ferrell ***." The court stated in *Whaley v. American National Insurance Co.* (1975), 30 Ill. App. 3d 32, 34, 331 N.E.2d 571, that "the courts cannot make a new contract by supplying provisions nor give plain and unambiguous language a distorted construction." In *Wilson v. La Salle Manufacturing & Machine Co.* (1978), 58 Ill. App. 3d 219, 221, 374 N.E.2d 30, the court stated: "It is not within the province of a court to make a new agreement into which the parties have not entered."

The plain language of the agreement in the case at bar is that the first payment was due at the end of the May 1, 1976, to April 30, 1977, fiscal year. I disagree with the majority's contrary holding and I therefore dissent.