(No. 56385.—

JOSEPH A. COURI, Appellant, v. ANTHONY J. COURI, Appellee.

*Opinion filed January 24, 1983.—Opinion modified Feb. 14, 1983.—Rehearing denied April 8, 1983.*

David B. Daley, of Sutkowski & Washkuhn Associates, of Peoria, for appellant.

John E. Cassidy, Jr., of Cassidy & Mueller, of Peoria, for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

This litigation began in 1974, approximately 6½ months after the dissolution of a partnership that had existed for some 20 years between the plaintiff, Joseph Couri, and his brother, Anthony Couri, the defendant. Pursuant to plaintiff's complaint, the circuit court of Peoria County ordered defendant to render a formal accounting to plaintiff, and on June 30, 1980, a court-appointed receiver wound up the partnership affairs. A final judgment was entered, in February 1981, for plaintiff in the amount of $122,690 and costs. Defendant appealed, plaintiff cross-appealed, and the appellate court reversed (103 Ill. App. 3d 445). We allowed plaintiff's petition for leave to appeal.

In 1941, plaintiff, defendant, and their brother Peter Couri orally agreed to operate as equal partners the "Couri Brothers Supermarket," a business which their father began in 1928. The brothers agreed that they would have equal control of the partnership, share equally in profits and losses and have equal rights in the partnership property. The agreement was of indefinite duration.

Plaintiff began working full time in his father's store

in 1935 and continued to do so until 1941, when he entered the United States Army. Defendant began working in the store in the early 30's and in 1941, following his father's death, assumed responsibility for the books and records of the newly formed partnership. Defendant continued to work full time at the store until 1946, when plaintiff returned from the Army and resumed his full-time position. Thereafter defendant apparently worked part time for several years until he formed another unrelated partnership, a tavern called the "Western Tap." From approximately 1949 until 1956, defendant devoted most of his time to that business while plaintiff continued to work full time in the supermarket. It was apparently during that time that Peter Couri entered medical school, and in 1954 plaintiff and defendant purchased his interest in the partnership. Their oral agreement was of indefinite duration, and provided that they would, in all respects, be equal partners.

Defendant sold the Western Tap in 1956, and for the next 10 years devoted a good deal of his time to real estate ventures on behalf of the supermarket partnership. During this period, plaintiff gave his full time to the store, working as a clerk as well as a butcher in the meat department.

The brothers continued to operate the partnership, with both now apparently working full time, until September 29, 1973, at which time they had an irreconcilable disagreement, resulting in plaintiff's leaving the store permanently. The circumstances under which the disagreement and dissolution of the partnership occurred were sharply disputed: Plaintiff claimed that he was precluded by defendant from full participation in the management and operation of the partnership, while defendant claimed that plaintiff abandoned the business and thereafter refused to participate. Although neither party acquiesced in the other's characterization of the circum-

stances surrounding plaintiff's departure, the trial court determined that the partnership was rightfully dissolved, a finding which has not been challenged on appeal.

In November 1973, plaintiff visited defendant at his home and requested and received some of the partnership records for the prior two years. The parties, however, were unable to resolve their differences, and plaintiff consequently demanded that defendant wind up the partnership affairs. Instead, in July 1974, defendant changed the locks on the store, closed out the partnership checking account, opened a new account which was in his exclusive control, changed the name of the grocery store from "Couri Brothers Supermarket" to "Couri's Supermarket," and continued to operate the store until the court-appointed receiver wound up the partnership affairs and disposed of its assets.

The books and records of the partnership as well as the tax returns were prepared and maintained by defendant throughout the partnership's existence. There were daily reports, and monthly and yearly summaries. The tax returns were prepared from the latter two. The daily reports were theoretically restated in the monthly and yearly summaries; however, at least for the years 1971 through 1974, income was admittedly substantially understated so that the summaries and tax returns for those periods did not accurately reflect actual income. The parties agreed at trial and in the appellate court that income could be reliably verified from the daily reports, a concession which the appellate court found difficult to accept because of its belief that those records could not have accurately reflected the partnership's net profit. It seems clear, however, that those records, if adequately explained, represented the most accurate description of the financial operation of the partnership. Unfortunately, the vast majority of the daily reports, which were in defendant's possession and under his con-

trol, were destroyed approximately two years after this litigation began. Despite a court order prohibiting defendant from destroying, altering or otherwise modifying any of the partnership's books and records, defendant's son cleaned his parents' attic, while the latter two were vacationing, resulting in the disposal of several boxes containing daily reports. According to the boy's testimony, he was instructed to clean the garage and attic by his mother, who testified she acted without consulting defendant.

The parties stipulated at trial that there would be no accounting of the partnership's financial affairs prior to 1957. Thus, the trial court's judgment was based upon the partnership's financial status from 1957 through June 1980. In response to the court's order requiring defendant to account for this period, defendant produced books, records, bank statements, and tax returns which may, at best, be described as contradictory and incomplete. Such daily reports as were available were mainly copies which plaintiff had fortuitously made of reports which he had received prior to trial but which were returned by him and were among those destroyed. To exacerbate matters further, defendant's bookkeeping practices were not in accord with generally accepted accounting principles.

Although neither party could provide precise calculations, both submitted memoranda and affidavits based upon the available evidence indicating the manner in which the income should be computed. Defendant's total figures varied from approximately $433,600 to $487,000, whereas plaintiff asserted that defendant's figures should be increased by approximately $527,000, resulting in a total in excess of $1 million. The estimated reported income (tax returns for four or five years were not produced and were no longer available from the Internal Revenue Service) was approximately $424,000. The trial

judge, who succeeded the originally assigned judge and whom the parties stipulated should decide the case on the basis of the transcripts and any additional hearings, determined that the accounting filed by defendant for the years 1957 through June 30, 1980, did not accurately reflect the net income of the partnership. Rather, the court found that the actual net income was $750,000. Further, based upon admissions in the record, the court found that defendant had drawn $88,000 from partnership funds in excess of that drawn by plaintiff. The court held, however, that defendant was entitled to compensation in the amount of $65,000 for the period from 1974 to June 30, 1980. The final award was accordingly based upon these figures with adjustments made for other assets of the partnership as well as money paid on property jointly owned.

Defendant appealed, contending, *inter alia,* that the trial court's determination regarding the net income of the partnership was against the manifest weight of the evidence. Plaintiff cross-appealed, arguing that the award should have been based upon an actual income in excess of $1 million. In addition, plaintiff argued that defendant was not entitled to the $65,000 compensation award. The appellate court, accepting one of defendant's arguments, reversed and dismissed plaintiff's petition for an accounting. It held that, notwithstanding defendant's duty to account, based upon the available incomplete evidence as well as the unreliability of the tax returns, plaintiff had failed to demonstrate an amount to which he was entitled. Although doubting the reliability of the daily reports, the court stated that once those documents were "innocuously swept away," an accounting became not only impractical but unattainable, and it was thus impossible to compute how much was due either party.

In our judgment the basic flaw in the appellate

court's reasoning is its mischaracterization of the conse-
quences of the breaches of defendant's fiduciary duties
and the destruction of the daily records which the court
had ordered him to preserve. Those records were in
defendant's sole possession and control, and while the
defendant's proof indicates he did not know they were
being destroyed, it is clear that he had not informed his
family of their importance and the necessity of their
preservation. Plaintiff's inability to be more specific in
his proof is the direct result of the breach of defendant's
obligations under the court order as well as his failure to
adequately discharge his fiduciary duties.

The basic partnership principles involved here are
well settled. A fiduciary relationship existed between the
partners and embraced all matters relating to the part-
nership business; each was bound to exercise the utmost
good faith and honesty in all dealings and transactions
relating to the partnership. (*Rizzo v. Rizzo* (1954), 3 Ill.
2d 291, 302; *Bakalis v. Bressler* (1953), 1 Ill. 2d 72, 78-
79; *Einsweiler v. Einsweiler* (1945), 390 Ill. 286, 293;
see also *Burtell v. First Charter Service Corp.* (1979),
76 Ill. 2d 427, 437-38.) As the managing partner who
was admittedly responsible for virtually all of the finan-
cial aspects of the partnership, defendant had a duty, as
trustee, to maintain regular and accurate records and to
account for partnership transactions. (*Altschuler v. Alts-
chuler* (1951), 410 Ill. 169, 177-78, 196-97; see also *Baka-
lis v. Bressler* (1953), 1 Ill. 2d 72, 78-79; *Einsweiler v.
Einsweiler* (1945), 390 Ill. 286, 293; *Wylie v. Bushnell*
(1917), 277 Ill. 484, 491; Ill. Rev. Stat. 1981, ch. 106½,
pars. 20, 21(1), 22.) All doubts and obscurities created by
his own negligent failure to keep adequate records were
properly resolved against him by the trial court. *Altschu-
ler v. Altschuler* (1951), 410 Ill. 169, 196-97; *Crimp v.
First Union Trust & Savings Bank* (1933), 352 Ill. 93,
102; Crane & Bromberg, Partnership sec. 66, at 384

(1968).

Despite the imprecise nature of some of plaintiff's proof, there was sufficient evidence from which the trial court could fashion an equitable decree, and we do not believe, as the appellate court apparently did, that in these circumstances the trial court was required to detail the nature or method of its calculations. Thus, unlike the case relied upon by the appellate court (*Fineman v. Goldberg* (1928), 329 Ill. 507), the evidence here, although voluminous, is not in such a state of uncertainty that it is impossible to determine whether any amount is due. We note, too, that in *Fineman*, although the defendant did obstruct the effort to state an account, plaintiff's failure to keep records during his tenure as managing partner also contributed to the problem. See also *Donaldson v. Donaldson* (1908), 237 Ill. 318; *Vermillion v. Baily* (1862), 27 Ill. 230.

Defendant's argument here that "right or wrong" the only concrete evidence available shows that net income was approximately $546,143 ignores the record and the applicable fiduciary principles. Based upon the available books and records, the testimony and reports of two accountants, the testimony of the parties, and the reasonable inferences from the evidence, the trial court could have reasonably concluded that income was substantially greater than defendant contended. Indeed it was evident that the tax returns were not accurate, as the appellate court (whose statement of facts has been adopted by defendant in this court) conceded. The trial court had evidence from which it could determine the approximate amount of the understatement for the years 1971-74. Further, the court could well have rejected much of defendant's evidence and testimony concerning the period from 1974-80, given the absence of any daily reports (which he no longer prepared) or other supporting documents to verify actual income, and the obvious disparity

between the profits defendant claimed and the known profits for the period in which he admitted the understatements. Too, the probative value of defendant's explanation concerning his change of accounting methods and his testimony concerning the accrual method upon which he had previously operated was not great. Even assuming that he had attempted to follow that method in previous years—which an accountant commissioned by the court was unable to verify from records which seemed to indicate the contrary—his methods were inconsistent with accepted accounting principles. Thus, had the court, based upon this evidence, determined that defendant continued to understate income during the years 1974-80, albeit in a somewhat lesser amount, it could have reasonably concluded that the net income of the partnership over the period in question was $750,000. While we express no opinion on defendant's testimony concerning his blamelessness in the destruction of the daily reports, we do point out that had defendant preserved those records as he was ordered to do, he might have been able to overcome or rebut some of the presumptions which were resolved against him. His inability to do so is the result of his own handling of the partnership's affairs. See *Altschuler v. Altschuler* (1951), 410 Ill. 169, 197.

Defendant's alternative position that plaintiff was guilty of *laches* is unpersuasive. He argues that he should not have been required to account for net profits for any period prior to 1966. In rejecting a similar claim in *Einsweiler v. Einsweiler* (1945), 390 Ill. 286, 292, this court stated that "[t]he general rule, subject to few exceptions, is that an action for a partnership accounting cannot be brought until the partnership has been dissolved. [Citations.] So long as a partnership continues, failure to demand a partnership accounting does not amount to *laches*. [Citations.]" (Accord, *Korziuk v. Kor-*

*ziuk* (1958), 13 Ill. 2d 238, 242; see also *Rizzo v. Rizzo* (1954), 3 Ill. 2d 291, 303-04.) Since plaintiff instituted his action for an accounting within a few months following the dissolution and the partners' unsuccessful attempt to resolve their differences, he is obviously not guilty of *laches*, and the trial court properly ordered defendant to render the accounting.

As we have indicated, the trial court had sufficient evidence from which it could determine the approximate net income of the partnership, and its finding in the amount of $750,000 is not against the manifest weight of the evidence. Given the difficulties of proof, which were largely of defendant's making, the court's finding is not an unreasonable resolution of the parties' conflicting claims. While the trial court undoubtedly relied, to some extent, on plaintiff's evidence concerning the proper method by which to increase the income beyond that actually reported, the court was not required to accept plaintiff's suggestion that defendant understated income over the entire period from 1957 to June 1980 in a consistent manner. Indeed, the court might well have concluded that the income could not have been substantially understated for most of the 1960's if it accepted the evidence which indicated that profits would have been insignificant during this period.

Plaintiff's final argument is that defendant was not entitled to compensation for operating the grocery store from 1974 to June 30, 1980. His point is well taken. In the absence of an agreement, "[n]o partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs." (Ill. Rev. Stat. (1981), ch. 106½, par. 18(f); see *In re Estate of Barbera* (1973), 55 Ill. 2d 235; *Bach v. Bach* (1940), 373 Ill. 442, 445; 1 S. Rowley, Partnership 484-98 (2d ed. 1960).) In this case, there was no

agreement, defendant was not a "surviving" partner, and he did not "wind up" the partnership's affairs following the rightful dissolution, as it was his duty to do. No compensation is allowed if a partner improperly continues the business instead of winding it up. (Crane & Bromberg, Partnership sec. 83, at 474 (1968); *Wickstrom v. Davis* (1957), 211 Or. 254, 315 P.2d 597.) In those instances where compensation has been allowed, it was clear that the business was continued by consent or there were other considerations making such an equitable allowance just. (*E.g., Timmermann v. Timmermann* (1975), 272 Or. 613, 538 P.2d 1254; *Vangel v. Vangel* (1955), 45 Cal. 2d 804, 809, 291 P.2d 25, 28.) In addition to the reasons already stated, we believe that such an allowance would be inappropriate here since the evidence established that there were several years in which plaintiff also devoted his full-time services to the partnership for which he was not compensated. Absent an agreement, courts will not attempt to equalize compensation commensurate with services (*Bach v. Bach* (1940), 373 Ill. 442, 445; *Brownell v. Steere* (1889), 128 Ill. 209, 212; *Burgess v. Badger* (1888), 124 Ill. 288, 301-02); accordingly we will not do so here.

For the reasons stated, the appellate court's judgment is reversed. Since his case has been in litigation for nearly nine years, in lieu of a remand, we affirm the circuit court's judgment insofar as it granted judgment to plaintiff for $122,690 and costs, and we enter judgment here for plaintiff for an additional amount of $32,500 and costs. *In re Estate of Barbera* (1973), 55 Ill. 2d 235, 239-40.

*Appellate court reversed;*
*circuit court affirmed;*
*additional judgment*
*entered here.*