GALVIN KENNEDY, Plaintiff-Appellant and Cross-Appellee, v. BARBARA MILLER *et al.*, Defendants-Appellees and Cross-Appellants.

Second District   No. 2—90—0959

Opinion filed November 7, 1991.—Rehearing denied December 26, 1991.

514

William E. Jegen, P.C., of Glen Ellyn (William E. Jegen, of counsel), for appellant.

Douglas Drenk and Nancy J. Smith, both of Drenk & Smith, Ltd., of Wheaton, and Leoris & Cohen, P.C., of Highland Park (David Drenk, of counsel), for appellees.

JUSTICE NICKELS delivered the opinion of the court:

Plaintiff, Galvin Kennedy (Kennedy), appeals the judgment rendered by the circuit court of Du Page County in favor of the defendants, Barbara and Laurence Miller (Millers), finding that Kennedy was not entitled to any profits from the parties' joint venture and that Kennedy was liable to the Millers for the amount of the proceeds distributed to Kennedy as a result of the sheriff's sale of certain venture property, which occurred when the Millers failed to post an appeal bond on a previous appeal. The Millers cross-appeal, asserting that the trial court abused its discretion in imposing

sanctions for filing an unfounded pleading for an improper purpose in violation of Supreme Court Rule 137 (134 Ill. 2d R. 137). We reverse that part of the trial court's decision that found Kennedy was not entitled to any profits and remand with directions to enter judgment for Kennedy and affirm that part of the decision that imposed sanctions on the Millers and their attorneys.

Because the facts have been presented on four separate previous appeals (*Kennedy v. Miller* (1981), No. 2—81—0112, *appeal dismissed; Kennedy v. Miller* (1987), 156 Ill. App. 3d 1171 (unpublished order under Supreme Court Rule 23); *Kennedy v. Miller* (1988), 174 Ill. App. 3d 48; *Kennedy v. Miller* (1990), 197 Ill. App. 3d 785), we include only so much of the extensive 14-year history of this case as is necessary to our consideration of the issues before this court.

In 1973, Kennedy and the Millers entered a joint venture to develop a certain group of lots in the Village of Glen Ellyn. Walter Hoffman introduced Kennedy to the Millers and provided a small portion of the financing. Hoffman's interest was, however, bought out by the Millers earlier in this litigation. In exchange for the Millers' contribution of the capital to finance the project, Kennedy agreed to acquire the lots, arrange improvements and surveys, construct a "spec" home to be used as a model, and sell the lots in connection with his construction company. Profits from the resale of the thus improved lots were to be shared equally by Kennedy and the Millers, and Kennedy was to have priority in repurchasing the lots for use in his construction business. It was anticipated that completion of the acquisition, installation of the improvements, and resale of the property would take 24 to 28 months.

In 1977, Kennedy filed a two-count complaint seeking an accounting and judgment for 50% of the profits disclosed by such accounting and an injunction preventing the Millers' sale of any additional lots belonging to the venture. In a bifurcated trial, the court initially rejected the Millers' contentions that no joint venture existed or that it had terminated after 28 months with the Millers retaining 100% of the venture property to dispose of as they wished. The court found the terms of the joint venture to be:

> "(1) Kennedy agreed to acquire the subject lots for the joint venture; to arrange for improvements of the said lots; to arrange for surveys; to build a 'spec' home to be used as a model.

(2) Kennedy further agreed to sell the lots subject to special assessments either separately or as part of construction contracts.

(3) The parties agreed that: 'That profits will be divided 50-50' *i.e.* 50% to the investors Millers (and Hoffman) and 50% to Kennedy.

(4) Lyons Savings and Loan Association was to have first opportunity to provide mortgage financing for buyers of the lots and especially upon construction deals of Kennedy.

(5) Kennedy was to have a priority for the purchase of said lots.

(6) Although no date or period for completion was in fact fixed, the parties anticipated the venture to be completed within two years to 28 months at which time it was to be dissolved. Upon dissolution, Kennedy was to have first right of refusal whereafter [*sic*] Millers would sell or keep.

(7) The court construes the meaning of the words 'the profits will be divided 50-50' from all of the testimony and conduct of the parties, to mean that regardless of the manner of disposition of the lots by the joint venture, Kennedy was to receive 50% of the profits. In like manner, the word 'profits' as used by the parties is construed to mean profits determined by the selling price less all direct costs of acquisition, improvements and preparation for and sale of the lots.

(8) The Millers (including Hoffman's share) agreed to provide financing for the joint venture."

The Millers appealed the court's finding that a joint venture existed, but their appeal was dismissed. (*Kennedy I*, No. 2—81—0112, *appeal dismissed* (1981).) On September 8, 1981, the court further found that Kennedy was entitled to an accounting and that the Millers had no personal claim against Kennedy for nonperformance, but rather that any "claimed nonperformance by a party may constitute a claim in favor of the joint venture and against the nonperforming party and that issue will be considered as part of the accounting." The court then invited the parties to submit statements of the remaining disputed issues of fact relative either to the accounting or to "any affirmative defense or counterclaim issues not previously decided," and eventually to submit motions for summary judgment as to issues relating to the "accounting and affirmative matters in the nature of [a] set off [*sic*] claimed by defendant."

The disputed issues so identified included Kennedy's alleged nonperformance and the Millers' claim for interest on their capital

investment as an expense of the venture. The trial court granted both Kennedy's motion for summary judgment as to the Millers' affirmative defense/counterclaim of nonperformance and Kennedy's motion for summary judgment as to the Millers' claim for interest on their capital investment, and in April 1984 the first accounting hearing proceeded.

Upon completion of the accounting hearing, the trial court entered judgment against the Millers and in favor of Kennedy for $194,204.50. The court further ordered the remaining two lots to be sold and the proceeds distributed equally between the Millers and Kennedy. Kennedy received $30,142.96 as a result of the sheriff's sale of the two lots. The Millers again appealed, asserting that the court erred at the first half of the bifurcated proceedings in finding the existence of a joint venture and further asserting that the court erred in granting Kennedy's motions for summary judgment prior to the beginning of the second half of the proceedings, the accounting hearing. Kennedy cross-appealed the trial court's denial of his claim for prejudgment interest. We affirmed the trial court's finding that a joint venture existed and that Kennedy was entitled to an accounting as contained in the court's September 8, 1981, order, but reversed the trial court's grants of summary judgment in favor of Kennedy on the Millers' counterclaim for nonperformance. Because such grant of summary judgment precluded consideration of Kennedy's nonperformance as it affected the amount of expenses of the joint venture and, therefore, ultimately the amount of profits of the joint venture, we remanded for a new accounting hearing and did not reach the issue of Kennedy's claim for prejudgment interest, nor other asserted errors relative to the calculation of the amount of the joint venture's profits including the Millers' claim of interest on their capital investment. *Kennedy II*, 156 Ill. App. 3d 1171 (unpublished order under Supreme Court Rule 23).

Upon remand to the trial court, Kennedy sought the appointment of a receiver to administer the venture funds frozen by the first trial court, which was denied. His interlocutory appeal was dismissed as moot when the Millers obtained the release of the subject funds. *Kennedy III*, 174 Ill. App. 3d 48.

In August 1989, Kennedy sought an order of the second trial court establishing rules for the second accounting, which the Millers opposed arguing that Kennedy's nonperformance under the joint venture agreement precluded an accounting or, alternatively, that the date of dissolution was as yet undetermined and was a prerequisite to an accounting. In reliance on our affirmance of the original

trial court's finding of the existence of a joint venture and Kennedy's entitlement to an accounting subject to setoff for any alleged nonperformance, the second trial court rejected the Millers' argument. The Millers then moved to vacate the order entered by the second trial court establishing the rules for the accounting or, alternately, for an order imposing the costs of the compilation of such second accounting on Kennedy. The second trial court found that the Millers' motion was in the nature of a motion for reconsideration and raised no new issue of either law or fact. The second trial court therefore found that the Millers and their attorneys had interposed the motion solely to harass Kennedy and *sua sponte* imposed sanctions of $1,000 on the Millers and their attorneys for Kennedy's attorney fees and costs to respond to the motion to vacate.

The fourth appeal thus occurred when the Millers and their attorneys sought an interlocutory appeal of the sanctions imposed by the second trial court. After allowing the Millers' attorney the opportunity to review their asserted basis of jurisdiction, of which they failed to avail themselves, we dismissed the appeal for lack of jurisdiction. Further, we imposed sanctions on the Millers and their attorneys for bringing a frivolous appeal. *Kennedy IV*, 197 Ill. App. 3d 785.

Upon return to the circuit court and after a change of venue to a different judge, the second accounting hearing eventually took place. The Millers' second accounting was received into evidence, and Kennedy offered evidence of his objections to the accounting, which can be summarized as discrepancies within the accounting, claims for excess expenses, and failure to include certain revenues. Neither Kennedy nor the Millers introduced any evidence of Kennedy's performance or nonperformance respectively.

The trial court held that: (1) the Millers' accounting was sufficient; (2) Kennedy was not entitled to any profits; (3) Kennedy was liable to the Millers for the amount of the proceeds of the sheriff's sale of the two lots; and (4) on all other matters, judgment was for the Millers and against Kennedy. Kennedy appeals, asserting that the trial court incorrectly reconsidered issues decided in the first half of the prior action and affirmed on appeal, failed to make specific findings of the amount of profits, and that its finding that Kennedy was not entitled to any profits was against the manifest weight of the evidence. He urges us to award him equitable prejudgment interest and, further, to enter judgment for him under Supreme Court Rule 366 (134 Ill. 2d R. 366). On cross-appeal, the

Millers assert that the court abused its discretion in awarding Kennedy attorney fees occasioned by their attempt to avoid the burden of compiling a second accounting.

Despite the complex history of this case and extensive record, the first issue we must decide is simply which party bore the burden of proof on the disputed fact of Kennedy's performance. Because we find that the Millers had the burden to prove Kennedy's nonperformance to prevail on their counterclaim, we must also address the issues of prejudgment interest and the application of Supreme Court Rule 366 to allow us to enter judgment for Kennedy to resolve this 14-year-old action. Finally, we will consider the Millers' cross-appeal of the imposition of sanctions for seeking to vacate the order establishing the rules for the second accounting.

The second trial court, after finding the Millers' accounting sufficient, found that Kennedy was not entitled to any profits despite that accounting, which reflected a profit of $8,670. The second trial court also found Kennedy liable to the Millers for $30,142.96, which was one-half of the profits from the sheriff's sale of the final two lots and which profits were not included in the Millers' accounting, although the cost of the lots was so included as an expense. Finally, the second trial court was without the benefit of either the record, or more specifically the Millers' accounting, in April 1989 when it handed down its decision. The entire record, including the Millers' accounting, was removed from the trial court in January 1989 for preparation and presentment of the fourth appeal to this court and not returned until May 1989. Thus, it is apparent, and the Millers concede, that the second trial court based its determination that Kennedy was not entitled to any profits not on any consideration of the accounting and the amount of profits but rather on Kennedy's failure to offer evidence of his performance. However, Kennedy had no burden to prove his performance at this stage of the proceedings.

■ The burden of proof in a suit for an equitable accounting is on the party that seeks the remedy to prove by a preponderance of the evidence that he has a right to the remedy. (*Ferrell v. Plastic-Drum Corp.* (1987), 159 Ill. App. 3d 936, 940.) The plaintiff must show that he has no adequate legal remedy and allege some special and substantial ground of equity jurisdiction such as the existence of a fiduciary relationship as exists between partners in a partnership. (*Bakalis v. Bressler* (1953), 1 Ill. 2d 72, 78; *Nieberding v. Phoenix Manufacturing Co.* (1961), 31 Ill. App. 2d 350, 356.) Thus, to prevail and prove an entitlement to an accounting, a party must

first prove the existence of a joint venture or partnership. *Schane v. Conrad* (1979), 68 Ill. App. 3d 961, 964-65.

A joint venture is a form of partnership, with the business of the partnership limited to a single, although often large, transaction or project. (*Harmon v. Martin* (1947), 395 Ill. 595.) However, the mere agreement to form a partnership does not of itself create a partnership. (*Wilson v. Campbell* (1848), 10 Ill. 383, 402.) Rather, a partnership arises only when the parties actually join together to carry on a venture for their common benefit, each contributing property or services and having a community of interest in the profits of the venture. (*Peck v. Peck* (1959), 16 Ill. 2d 268, 280.) Thus, at the initial hearing to determine if a party is entitled to an accounting, the party seeking the accounting must prove the intent to form a partnership, as well as contribution to the partnership of either property or services. See *Ferrell*, 159 Ill. App. 3d at 940.

If the party seeking the accounting prevails in an initial hearing and proves his entitlement to such proceeding, a second separate hearing on the actual accounting is conducted. (*Schane*, 68 Ill. App. 3d at 964-65; *Derkers v. Vaughan Co.* (1952), 348 Ill. App. 407, 409.) At the accounting, the party managing or controlling the venture and possessing the records of the venture has a fiduciary duty to the party seeking the accounting and has the burden to produce the accounting. (*Couri v. Couri* (1983), 95 Ill. 2d 91, 98.) Any doubts created by errors or omissions in the accounting are resolved against the party producing it. (*Couri*, 95 Ill. 2d at 98.) If a party seeks credits against the accounting, such party has the burden to prove them. *Clapp v. Emery* (1881), 98 Ill. 523, 536.

In this instance, the first trial court determined at the initial half of the bifurcated proceedings that Kennedy joined with the Millers to develop the lots for their common benefit. The Millers contributed the financing, and Kennedy contributed his services. Each was to share equally in the profits of the venture. The court rejected the Millers' evidence that Kennedy's nonperformance prevented the creation of the joint venture. Rather, the trial court found that a claim based on the alleged nonperformance by Kennedy inured only to the benefit of the joint venture, which, if proved, could be set off or credited against the profits of the joint venture at the accounting. Thus, the trial court found that a joint venture existed and that Kennedy was entitled to an accounting.

We explicitly affirmed the trial court's determination that a joint venture existed and that Kennedy was entitled to an account-

ing. We reversed and remanded for a new accounting, however, to allow the Millers the opportunity to adduce evidence of their counterclaim for Kennedy's breach of the joint venture agreement, which had been precluded by the trial court's grant of Kennedy's motion for summary judgment on that issue. Thus, the only question before the second trial court was the *amount* of Kennedy's entitlement to profits, which required a determination of the amount of profits, or losses, of the joint venture. The court at the second accounting hearing was bound by our determination that Kennedy was entitled to an accounting. Therefore, the issue of Kennedy's nonperformance related only to the Millers' counterclaim for credits against the amount of profit generated by the joint venture and on which the Millers bore the burden of proof. The Millers' own accounting reflects profits of $8,670 without reference to either Kennedy's evidence of his objections or the additional profits previously distributed pursuant to the court-ordered sheriff's sale of the final two venture lots. Thus, even accepting the Millers' accounting, it is apparent that Kennedy was entitled to some profits, and the decision of the second trial court that he was not entitled to any profits was patently against the manifest weight of the evidence.

In addition to the $8,670 of profits admitted by the Millers' own accounting, Kennedy offered unrebutted evidence of an additional $58,253 in recapture funds, which were collected by the Village of Glen Ellyn as part of the cost of building permits issued for the lots and paid to the Millers on behalf of the venture to recover the amounts expended improving the property. The records of the bank that held such funds indicated $4,004 more in interest paid than was reflected on the Millers' accounting. Although the Millers included the cost of the final two lots as an expense of the venture, they failed to include the proceeds from the sale of those lots in 1986, which were $71,661. Finally, Kennedy offered evidence of discrepancies in the Millers' accounting relative to the cost of several lots, title insurance charges, and trust fees that total an additional $12,656 in revenue. Thus, these adjustments reflect a net profit of $155,244.

■ However, the Millers' profit figure of $8,670 included as an expense of the venture $224,792 in claimed interest at 15% per annum on the Millers' own capital contribution, which was reflected only on the cover sheets to their accounting. However, the Millers' bare conclusion that they are entitled to interest on their capital contribution is unfounded as a matter of law. Section 18(d) of the Uniform Partnership Act (Ill. Rev. Stat. 1987, ch. 106½, par. 18(d)),

which governs this joint venture, provides that no interest accrues on the contribution of a partner until it becomes due absent an express agreement to the contrary. (Ill. Rev. Stat. 1987, ch. 106½, par. 18(d); *Al Wiegand, Inc. v. Wiegand Concrete Products, Inc.* (1978), 65 Ill. App. 3d 1045, 1048-49.) Therefore, in addition to the $155,244 in profits noted above, we readd the additional $224,792 incorrectly deducted by the Millers as an expense of the venture. We find that the profits of the joint venture were $380,036, which is the total amount of profits Kennedy asserts the venture generated as well. Kennedy's entitlement to profits was one half that amount. We, therefore, reverse the decision of the second trial court that the Millers' accounting was sufficient and that Kennedy was not entitled to any profits, as well as its finding of judgment against Kennedy on all other issues, and find that Kennedy was entitled to profits of $190,018.

■ Kennedy also asserts, however, that he is entitled to equitable interest at the prevailing prime rate on the profits that the Millers wrongfully withheld. Where a breach of fiduciary duty has occurred, an equitable award of interest may be appropriate to make an injured party complete by forcing the fiduciary to account for profits and interest gained through the use of the injured party's money. (*In re Estate of Wernick* (1989), 127 Ill. 2d 61, 87.) In this context, prejudgment interest arises from the concepts of fairness and equity rather than as a sanction against the wrongdoer. (*In re Estate of Wernick*, 127 Ill. 2d at 87.) Statutory interest rates, which are the basis of interest imposed as a sanction, do not provide an accurate measure of compensation for the economic loss occasioned by money wrongfully withheld. (*In re Estate of Wernick*, 127 Ill. 2d at 87-88.) Rather, an award of interest at the prevailing prime rate is necessary so that Kennedy can be made whole. See *In re Wernick*, 127 Ill. 2d at 88.

■ The record contains evidence of the prevailing prime rate from 1979 through September 29, 1989, as well as Kennedy's portion of the venture's profits by year. Kennedy urges us to enter judgment here as authorized by Supreme Court Rule 366 (134 Ill. 2d R. 366), which allows a court to enter an order that should have been entered below when the information necessary to resolve the issues is present in the record and when the litigation has dragged on an unreasonable amount of time. (*Couri*, 95 Ill. 2d at 102 (nine years); *In re Estate of Barbera* (1973), 55 Ill. 2d 235 (six years).) Despite 14 years of litigation and four prior appeals and although we find this instance to be particularly appropriate for application

of Rule 366, we find that the absence from the record of evidence of the prime interest rates for the last quarter of 1989, as well as 1990 and 1991, prevents us from exercising our authority pursuant to Supreme Court Rule 366. However, we find that Kennedy is entitled to $190,018.23 in profits, less $30,142.96 already disbursed to Kennedy in 1986 pursuant to court order, and $239,472.53 in equitable interest or a total of $399,347.80 for the years 1979 through 1988, as detailed below:

| Year | Interest Rate | Interest Due | Profits Due | Cumulative Total Due |
|---|---|---|---|---|
| 1978 | - | - | $68,864.70 | $68,864.70 |
| 1979 | 12.67 | $8,725.16 | 32,800.94 | 110,390.80 |
| 1980 | 15.27 | 16,856.68 | 2,295.17 | 129,542.65 |
| 1981 | 18.87 | 24,444.70 | 27,146.60 | 181,133.95 |
| 1982 | 14.84 | 26,880.28 | 38.99 | 208,053.22 |
| 1983 | 10.79 | 22,448.94 | 2,347.54 | 232,849.70 |
| 1984 | 12.04 | 28,035.10 | 3,334.58 | 264,219.38 |
| 1985 | 9.93 | 26,236.98 | 7,646.41 | 298,102.77 |
| 1986 | 8.33 | 24,831.96 | 5,939.05 | 328,873.78 |
| 1987 | 8.20 | 26,967.65 | 9,449.08 | 365,290.51 |
| 1988 | 9.32 | 34,045.08 | 6.85 | 399,342.44 |
| 1989 | | | 5.36 | 399,347.80 |
| TOTAL: | | $239,472.53 | $159,875.27 | $399,347.80 |

In addition, Kennedy is entitled to an additional award of equitable interest at the prevailing average prime rate for the years 1989, 1990, and a portion of 1991, which must be determined after evidence of those rates is admitted on remand.

We now turn to the Millers' cross-appeal, which asserts that the second trial court abused its discretion in imposing $1,000 in attorney fees and costs as a sanction against the Millers and their attorneys for interposing an unfounded motion solely to harass Kennedy. Upon remand to the trial court after the Millers' successful appeal (*Kennedy II*, 156 Ill. App. 3d 1171 (unpublished order under Supreme Court Rule 23)), Kennedy moved for an order establishing the rules for the second accounting, which the Millers opposed again arguing that Kennedy had failed to establish his entitlement to an accounting. After review of our opinion and mandate, the second trial court granted Kennedy's motion and entered an order establishing the rules for the accounting. However, the Millers interposed a motion to vacate that order, asserting still again that they had no duty to account to Kennedy. The court spe-

cifically found that the motion was unfounded and had been interposed merely to harass Kennedy and cause an unnecessary expense.

 ■ Supreme Court Rule 137 (134 Ill. 2d R. 137) provides that the court on its own initiative may impose an appropriate sanction on an attorney or party who interposes an unfounded pleading for an improper purpose, including harassment of the opposing party or to cause delay or needless expense. Such appropriate sanctions may include, but are not limited to, reasonable expenses generated as a result of the improper pleading. (134 Ill. 2d R. 137.) The trial court's decision to impose sanctions will not be reversed absent an abuse of discretion. *In re Marriage of Getautas* (1989), 189 Ill. App. 3d 148.

The question of Kennedy's right to an accounting was decided by the initial trial court, which we affirmed on appeal. (*Kennedy II*, 156 Ill. App. 3d 1171 (unpublished order under Supreme Court Rule 23).) Thus, the Millers' assertion that Kennedy was not so entitled was patently unfounded. The second trial court's imposition of sanctions based upon the Millers' repeated assertions to the contrary was not an abuse of discretion. Nor do we find merit in the Millers' assertion that the omission from the record of evidence of Kennedy's actual attorney fees and costs precluded imposition of the $1,000 sanction imposed. Because the second trial court was not limited to imposition of only reasonable attorney fees, but free to determine the appropriate sanction (134 Ill. 2d R. 137), Kennedy was not required to present evidence of his attorney fees incurred as a result of the Millers' improper pleading.

The judgment of the second trial court finding that Kennedy was not entitled to any profits and entering judgment for the Millers is reversed, and the cause is remanded. On remand, the trial court is directed to allow Kennedy to offer evidence of the prevailing average prime interest rate for the years 1989, 1990, and 1991 to date and to enter judgment for Kennedy for profits and equitable interest through 1988 in the amount of $399,347.80, plus the additional equitable interest on that amount for the years 1989, 1990 and 1991 based on the evidence so received, and costs. We note for clarification that this judgment is in addition to the $30,142.96 already paid to Kennedy pursuant to the initial trial court's order directing the sheriff's sale of the final two venture lots. The order of the second trial court imposing $1,000 in sanctions against the Millers for filing an unfounded pleading for an improper purpose is affirmed.

Affirmed in part; reversed in part and remanded.

DUNN and GEIGER, JJ., concur.