[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE BY DEFENDANTS LMW INVESTMENTS, INC., SLAVIK SUITES, INC., LEN WOLMAN AND MARK WOLMAN (#184)
The defendants LMW Investments, Inc. ("LMW"), Slavik Suites, Inc. ("Slavik"), Len Wolman and Mark Wolman, on June 18, 2001, moved to strike the first and second counts of the plaintiff's amended complaint for failure to state a claim upon which relief may be granted. The first count asserts claims of breach of fiduciary duty, while the second count asserts claims of fraudulent nondisclosure. Because the question of whether the defendants committed fraudulent nondisclosure relies primarily on whether a fiduciary duty existed, these two counts will be CT Page 10631 dealt with together.
A brief review of the history underlying this case will be helpful in providing the context in which these claims arise. The parties have been involved in the development of the Mohegan Tribe of Indians of Connecticut ("tribe") gaming and resort facilities. The tribe, on January 20, 1993, entered into an agreement with Trading Cove which gave Trading Cove the exclusive right to develop, design, manage, construct, market and finance a gaming casino and resort on the tribe's reservation in southeastern Connecticut. Trading Cove was an association of four companies, including Leisure Resort, LMW, Slavik and RJH Development("RJH"). Subsequently, all of the associations comprising Trading Cove entered into an agreement on July 27, 1993, forming a Trading Cove partnership for the purpose of developing the Mohegan Sun facility. On February 3, 1995, Trading Cove, Sun Cove Limited, the original partners to Trading Cove, and Lee Tryol entered into an acknowledgment and release agreement whereby Leisure Resort relinquished its 5% partnership interest in Trading Cove in exchange for a 5% beneficial interest in the partnership.
In August of 1997, Leisure Resort filed a lawsuit against Trading Cove, Waterford Gaming, Sun Cove, LMW, Slavik and RJH. Negotiations by the parties resulted in a settlement and release agreement executed in January of 1998. The agreement provided for a stipulation of dismissal, with prejudice, of the 1997 lawsuit, and a relinquishment of the beneficial interest in Trading Cove.
Trading Cove and the tribe on February 7, 1998, entered into a relinquishment agreement terminating the gaming facility management agreement by which Trading Cove had transferred its right to manage the facility in exchange for 5% of the gross revenue generated from the facility for a period of approximately 14 years commencing January 1, 2000. Trading Cove and the tribe also entered into a development services agreement in which Trading Cove agreed to oversee the planning, design and construction of an expansion project at the facility, which project is currently valued in excess of $750 million dollars.
On October 13, 2000, the court (Gordon, J.) ruled that the plaintiff's alter-ego allegations against LMW, Slavik, Len Wolman and Mark Wolman were insufficient to state a claim and should be stricken from the complaint. Notwithstanding that order, the plaintiff took the position that its complaint continued to state claims against the defendants LMW, Slavik, Len and Mark Wolman in that they had, in their individual capacities, breached their fiduciary duties and disclosure requirements.
"The purpose of a motion to strike is to contest . . . the legal CT Page 10632 sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted . . . (Citations omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Seashell Associates,244 Conn. 269, 270 (1998). "A motion to strike admits all facts well pleaded." Parsons v. United Technology Corp., 243 Conn. 66, 68, 700
(1997). "In deciding upon a motion to strike . . . a trial court must take the facts to be those alleged in the complaint . . . and cannot be aided by the assumption of any facts not therein alleged." (Citations omitted; internal quotation marks omitted.) Liljedahl Bros., Inc. v.Grigsby, 215 Conn. 345, 348 (1990) "[A motion to strike] does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." Mingachos v. CVS, Inc., 196 Conn. 91, 108 (1985). "The court must construe the facts in a complaint most favorable to the plaintiff."Faulkner v. United Technologies Corp., 240 Conn. 576, 580 (1997). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied (Citation omitted; internal quotation marks omitted.) . . ." Id. "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citations omitted.) Novametrix Medical Systems v. BOCGroup, Inc., 224 Conn. 210, 215 (1992).
The complaint does not contain any specific allegation with respect to a fiduciary duty owed to the plaintiff by the defendants LMW, Slavik and Mark Wolman. In their brief in opposition to this motion to strike, the plaintiff asserts only that the first amended complaint contains direct allegations of breach of fiduciary duty against Len Wolman. In oral argument, the plaintiff abandoned its breach of fiduciary duty claim against the defendants LMW, Slavik and Mark Wolman.
The allegations on which the plaintiff relies for its breach of fiduciary duty claim against the remaining defendant Len Wolman arise from his numerous business relationships: (a) acting as managing partner of Waterford Gaming; chief negotiator for Trading Cove with the tribe; chief executive officer, chairman of the board of directors and chief negotiator for Waterford Gaming; owner, director and president of LMW; and owner, director and vice-president of Slavik. Amended Complaint, First Count, paragraph 7. The complaint also alleges that Len Wolman, as president of LMW and vice-president of Slavik, signed a relinquishment agreement on behalf of Waterford Gaming. The amended complaint alleges that the defendant Len Wolman owed Leisure Resort a fiduciary duty; that the defendants owed Leisure Resort a duty to disclose the agreement, and/or negotiations for a new agreement, between themselves and the Mohegan tribe; and by their nondisclosure, the defendants breached their fiduciary duties to Leisure Resort.
In support of its claim that a fiduciary duty existed and was CT Page 10633 breached, the plaintiff cites Connecticut case law that recognizes a fiduciary relationship by an officer and director of a corporation to its stockholders. Pacelli Bros. Transportation, Inc. v. Pacelli, 189 Conn. 401,407 (1983); also see Katz Corp. v. T.H. Canty Co., 168 Conn. 201, 207
(1975); Arrigoni v. Adorno, 129 Conn. 673, 681 (1943); Osborne v. LockeSteel Chain Co., 153 Conn. 527, 534 (1966); Massoth v. Central BusCorp., 104 Conn. 683, 689 (1926); and Mallory v. Mallory Wheeler Co.,61 Conn. 131, 139 (1891). The plaintiff also cites Cross, Corporation Law in Connecticut § 6.8; 3 W. Fletcher, Cyclopedia of Corporations §§ 838, 850 (Perm. Ed.), and General Statutes § 33-756.
This cited authority is of limited value in that Trading Cove was not a corporation, but a partnership. The plaintiff fails to cite any cases holding that the fiduciary duties of an agent of a partnership are equivalent to those of a corporate officer and/or director.
There does not appear to be any Connecticut law on the subject, but the authority from other jurisdictions indicates that the common law of partnership is quite distinct. See Balabonos v. North American Inv.Group, Ltd., 708 F. Sup. 1488, 1495 (N.D.Ill. 1988), deciding that
 the fiduciary duties owed in a partnership are owed by the partners, see, e.g., Couri v. Couri, 95 Ill.2d 91, 98, 69 Ill. Dec. 117, 121, 447 N.E.2d 334, 337
(1983), and Thomas and Kaufman were not partners but rather employees or agents of N.A.I.G. See Amended Complaint ¶¶ 10-11, 13. Therefore, as a matter of law, they could not have breached fiduciary duties or wasted partnership assets.
Id. In this case, a corporation was a partner, so any claim of breach of fiduciary duty by another partner lay against the corporation and not against its sole shareholder. See Sturm v. Goss, 368 S.E.2d 399 (N.C.App. 1988) (summary judgment for defendant proper where corporation, not its sole shareholder, allegedly breached fiduciary duty). Only a partner to a partnership agreement can be liable for breach of the agreement or breach of a fiduciary duty relating to partnership obligations. Rothmeier v.Investment Advisers, Inc., 556 N.W.2d 590 (Minn.App. 1996). See alsoMaywalt v. Parker Parsley Petoleum Co., 808 F. Sup. 1037 (S.D.N.Y. 1992) (fiduciary relationship was found to exist only between the general partner and the limited partners; the limited partners could bring an action only against the general partner, not against the officers and directors of the general partner)
The second count of the complaint asserting fraudulent nondisclosure is premised on the plaintiff's claim that the defendants owed the plaintiff a CT Page 10634 fiduciary duty. The amended complaint in the second count at paragraph 42 states that "[a]t all times prior to January 6, 1998, by virtue of their fiduciary relationship with Leisure Resort, the Defendants owed Leisure Resort a duty to disclose the existence of their Buy-Out Negotiations with the Mohegan Tribe and the Mohegan Authority." Paragraph 43 of the second count of the complaint asserts that "[a]lthough the Defendants had knowledge of the Buy-Out Negotiations, they failed to disclose the information to Leisure Resort." Paragraph 44 of the second count further alleges that "the Defendants had the opportunity and duty to disclose this information to Leisure Resort, and by failing to disclose the existence of the Buy-Out Negotiations, the Defendants intentionally omitted this information in order to induce Leisure Resort to agree to the terms of the Settlement Agreement."
In order to allege fraudulent nondisclosure, the complaint must contain allegations supporting certain elements of fraud. Pospisil v. Pospisil,59 Conn. App. 446, 450 (2000), cert. denied, 254 Conn. 949 (2001). "Fraud involves deception practiced in order to induce another to act to [their] detriment, and which causes that detrimental action. . . . The four essential elements of fraud are (1) that a false representation was made; (2) that the party making the representation knew it to be false; (3) that the representation was made to induce action by the other party; and (4) that the other party did so act to [their] detriment. . . . Fraud by nondisclosure, which expands on the first three of these four elements, involves the failure to make a full and fair disclosure of known facts connected with a matter about which a party has assumed to speak, under circumstances in which there is a duty to speak. . . ." (Citations omitted; internal quotation marks omitted.) Id. "The key element in a case of fraudulent nondisclosure is that there must be circumstances which impose a duty to speak." Jackson v. Jackson,2 Conn. App. 179, 194, cert. denied, 194 Conn. 805 (1984).
The plaintiff argues that in addition to the alleged fiduciary relationship discussed above, the existence of a business relationship between the moving defendants and Leisure Resort created at law the "circumstances which impose a duty to speak." The complaint does not and cannot allege that the moving defendants LMW, Slavik, Len and Mark Wolman were partners to the partnership with the plaintiff Leisure Resort. There is no law supporting the claim that an individual's participation as an agent to a principal creates a duty by that agent, in his individual capacity, to disclose information about matters affecting his principal.
The plaintiff cites the decision in Scribner v. O'Brien, Inc.,169 Conn. 389, 404 (1975), for the proposition that "where an agent or officer commits or participates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is liable to CT Page 10635 third persons injured thereby." Id. Scribner is not, however, the situation alleged in this case. The defendants here were corporations or individuals acting in their corporate capacities. Scribner was dependant upon the finding that the defendant acted in his individual rather than in a corporate capacity when the alleged tort was committed. Similar allegations are not contained in the amended complaint before this court.
The plaintiff has abandoned its claim that the defendants LMW, Slavik and Mark Wolman owed the plaintiff a fiduciary duty. Accordingly, the motion to strike the first count is granted with respect to those defendants. The court further finds that the allegations contained in the first count fail to demonstrate that the defendant Len Wolman owed a fiduciary duty to the plaintiff. The defendant Len Wolman was not a partner with the plaintiff, and the law is that only a partner to the partnership may be liable for breach of a fiduciary duty arising from partnership obligations. The motion to strike the first count of the amended complaint as to Len Wolman is granted.
Inasmuch as the moving defendants had no fiduciary relationship with the plaintiff, that alleged relationship cannot serve as the basis for the duty to disclose that is claimed to have been breached in the second count. The facts alleged fail to demonstrate that the moving defendants had either a fiduciary or business relationship with the plaintiff that would support a claim for fraudulent nondisclosure. Inasmuch as "[t]he key element in a case of fraudulent nondisclosure is that there must be circumstances which impose a duty to speak," Jackson v. Jackson,2 Conn. App. 194, the plaintiff has failed to plead the elements of a cause of action for fraudulent nondisclosure against the defendants. The motion to strike the second count is granted.
 Conclusion
The motion to strike the first and second counts of the amended complaint as to the defendants LMW, Slavik, Len Wolman and Mark Wolman (#184) is granted.
ROBERT F. McWEENY, J.